KILLILEA, APPELLANT, *v.* SEARS, ROEBUCK & CO. ET AL., APPELLEES.

(No. 85AP-467—Decided
December 3, 1985.)

*Richard F. Swope,* for appellant.
*Murphey, Young & Smith* and *Kevin R. McDermott,* for appellees.

NORRIS, J. Plaintiff appeals from an order of the trial court granting summary judgment to defendants Sears, Roebuck & Co., and Roderick Wheeler, a security employee of Sears.

In her complaint, plaintiff alleged that she and her husband, after shopping at Sears one December evening, selected for purchase items costing $175.57; that the cashier advised them she was required to obtain approval before she could accept their personal check in payment; that defendant Wheeler responded to her call and "immediately became rude with plaintiff"; that he called the store's credit department and told plaintiff and her husband that their account balance was almost $500 and that he could not see why he should approve their check, although plaintiff and her husband had maintained a favorable credit rating with Sears; that, when her husband attempted to secure Wheeler's attention, he responded that he could arrest them for assault and battery, and then began to taunt them; that, when plaintiff asked to see a supervisor, Wheeler said they were under arrest and called other security personnel; that Wheeler and the other security personnel conducted plaintiff to an isolated area in the store and detained her against her will for two or three hours; that Wheeler and the others "paraded" plaintiff through the store on two occasions and later placed her in a police cruiser; that she was continually subjected to great public awareness of her detainment; that she was humiliated by being subjected to a personal search of her person against her wishes; that Wheeler's statements were made in the presence of the cashier and other customers; that Wheeler filed criminal charges against her for disorderly conduct, with malicious intent; that Wheeler was without authority to arrest her; that plaintiff was found not guilty of the criminal charges; and that, as a result of defendants' conduct, she suffered extreme emotional distress.

Defendants' motion for summary judgment, and plaintiff's memorandum of law in opposition to summary judgment, were accompanied by evidentiary documentation. In its decision sustaining defendants' motion, the trial court concluded that:

"* * * [T]here is no genuine issue of material fact and * * * defendants are entitled to judgment as a matter of law on statute of limitations grounds and because of the existence of probable cause and the advice of counsel. * * *"

Plaintiff raises two assignments of error:

"1. The Trial Court erred in sustaining the defendants-appellee's [*sic*] Motion for Summary Judgment on the basis of the statute of limitations and on the basis there were no genuine issues of facts as to causes of action which were clearly not time barred.

"2. The Trial Court erred in sustaining the defendants-appellee's [*sic*] Motion for Summary Judgment on the defenses of probable cause and advice of counsel."

Because the assignments of error

are interrelated, we will combine them for purposes of discussion.

Plaintiff, while conceding her claims for slander, false imprisonment, and false arrest were time-barred, contends that she also pleaded claims for invasion of privacy and intentional infliction of serious emotional distress, which were not time-barred, and further argues that genuine issues of material fact existed for trial on her cause of action for malicious prosecution. While not disputing the availability of a longer statute of limitations for invasion of privacy and intentional infliction of serious emotional distress, defendants respond that plaintff's complaint did not raise those causes of action. They further argue that the trial court properly granted them summary judgment on the malicious prosecution claim, since there was no genuine issue as to any material fact concerning defendants, having established that Wheeler had probable cause to charge plaintiff with disorderly conduct and that he had acted upon the advice of counsel.

In order for the trial court to have dismissed plaintiff's complaint, in the course of sustaining defendants' motion for summary judgment, it necessarily was required to address plaintiff's contention, raised in her memorandum contra, that defendants' motion for summary judgment was directed at only four causes of action, whereas she had pleaded six. Under the circumstances of this case, then, that required that the trial court treat plaintiff's contention in the light of whether or not she had failed to state a claim upon which relief could be granted upon those two additional causes of action. In the absence of a determination that she had failed to state a claim for invasion of privacy or infliction of serious emotional distress, the trial court could have granted only partial summary judgment, concerning all or some of the other four causes of action. In order for the trial court to

have dismissed the two additional causes of action, on the ground that plaintiff failed to state a claim upon which relief can be granted, it must have appeared from the complaint that plaintiff could prove no set of facts entitling her to recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223].

The specificity required for pleadings under the Civil Rules has been well-stated by Judge John W. McCormac:

"The Civil Rules do not require the pleader to state with precision all elements that give rise to the basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory (not necessarily the legal theory of the pleader), or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. In other words, if there is no hint in the pleadings or proof of a particular material point necessary to enable the pleader to prevail, that allegation will not be considered within the pleadings. * * *" McCormac, Ohio Civil Rules Practice (1984 Supp.) 53-54, Section 5.03.

Although the complaint was perhaps inartfully drawn, we are unable to say that, under its allegations, plaintiff would be unable to prove a set of facts entitling her to recover for infliction of serious emotional distress. See *Reamsnyder* v. *Jaskolski* (1984), 10 Ohio St. 3d 150; *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131; *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369; *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72; *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31.

We view the allegations of plaintiff's complaint, which she contends amount to pleading a cause of action for invasion of privacy, in much the same way.

Although, from the organization of the complaint, one may argue that a cause of action for invasion of privacy is not alleged with great clarity and specificity, we are unable to say that, if plaintiff proves her allegations, she will not have established an actionable invasion of her privacy.

Dean William L. Prosser has concluded that invasion of privacy is not one but, rather, four distinct torts. Prosser, Privacy (1960), 48 Cal. L. Rev. 383. This approach, that there are four distinct kinds of invasion of four different interests of a plaintiff which are tied together by the common term "invasion of privacy," has been adopted by the Restatement of the Law. (Restatement of the Law 2d, Torts [1977] 376, Section 652A.)

Dean Prosser's four classifications are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

In *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], in paragraph two of the syllabus, the Ohio Supreme Court recognized a cause of action for the first, second, and fourth torts:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

The Supreme Court's opinion was silent regarding the third tort, the "false light" cause of action and, subsequently, the court specifically declined to recognize such a theory of recovery. *Yeager* v. *Local Union 20, supra,* at 372.

See, also, *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143 [23 O.O.3d 182]; *Strutner* v. *Dispatch Printing Co.* (1982), 2 Ohio App. 3d 377.

In this case, there was no appropriation of plaintiff's name by defendants for their advantage. The "intrusion" tort is not dependent upon publicity of private matters, but is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs. Examples would be wiretapping, watching or photographing a person through windows of his residence, and the kind of harassing collection practices involved in *Housh* v. *Peth, supra.*

Plaintiff's claim, then, appears to fit, if at all, under the second theory, sometimes called the "publicity" tort. The Restatement, *supra,* at 383, presents this definition of the tort:

"§ 652D. Publicity Given to Private Life

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

In order for plaintiff to state a claim for which relief can be granted under this cause of action:

(1) There must be publicity; the disclosure must be of a public nature, not private. "Publicity" means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to "publication" as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person.

(2) The facts disclosed must be those concerning the private life of an individual, not his public life. There is no

liability when the defendant merely gives further publicity to information about the plaintiff that is already public, such as matters of public record about his birth or marriage date, or matters that the plaintiff leaves open to the public eye, such as kissing his spouse in public.

(3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

(4) The publication must have been made intentionally, not negligently. *McCormick* v. *Haley* (1973), 37 Ohio App. 2d 73 [66 O.O.2d 132].

(5) The matter publicized must not be a legitimate concern to the public. A newspaper's publicizing "legitimate news" ordinarily will not be actionable.

With these standards in mind, we are unable to say that it appears beyond doubt from the complaint that plaintiff can prove no set of facts entitling her to recovery under the "publicity" theory of invasion of privacy.

The proper remedy was to require plaintiff to make a more definite statement (Civ. R. 12[E]) concerning the claims for infliction of serious emotional distress and invasion of privacy, not dismissal. That would not have subjected defendants to any disadvantage, since the four-year limitation period for these causes of action had not yet run at the time the court ruled upon the motion. And, because the Supreme Court, in allowing recovery for infliction of serious emotional distress, changed the common law of Ohio, the change is applicable to torts that occurred prior to the time the Supreme Court issued its opinions. See 2 Anderson's Ohio Civil Practice (1985) 533, Section 56(A)(.01).

We now turn to the trial court's granting of summary judgment for defendants on plaintiff's claim for malicious prosecution. Without question, the supporting affidavits of plaintiff and Wheeler were inconsistent in their recitals of the events leading up to Wheeler's filing of charges, so that a genuine issue of material fact existed for trial on the element of lack of probable cause. However, because at first glance the evidentiary documentation filed by both parties would appear to leave uncontroverted defendants' evidence that Wheeler relied upon the advice of counsel in filing the charges, and advice of counsel may serve as a complete defense to a claim of malicious prosecution, that portion of the summary judgment bears close scrutiny.

Resolution of a motion for summary judgment does not include trying the credibility of witnesses. If an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question — for example, where the potential for bias and interest is evident — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness. *Duke* v. *Sanymetal Products Co.* (1972), 31 Ohio App. 2d 78, at 83 [60 O.O.2d 171]; McCormac, Ohio Civil Rules Practice (1984 Supp.) 66, Section 6.33.

Credibility concerns normally arise in summary judgment proceedings when the affidavits or depositions of witnesses are in conflict concerning a fact to be proved. Under these situations, it is evident that resolution of the factual dispute will depend, at least in part, upon the credibility of the witnesses, and trial courts routinely deny summary judgment. However, credibility concerns can also be present where, on the face of evidentiary documentation supporting a motion for summary judgment, the moving party's evidence on a factual issue appears to be uncontroverted. This will be the case where, under the circumstances, credibility

manifestly is critical to a determination that there is no genuine issue as to the existence of that fact.

We believe that the affidavit of Roderick Wheeler, upon which the trial court necessarily relied for its conclusion that defendants had established that Wheeler had acted upon the advice of counsel, presents the kind of circumstances that manifestly raise a question of credibility which cannot be resolved on summary judgment. The pertinent portion of his affidavit follows:

"I determined that I should consider filing criminal charges against plaintiff and her husband. I left the room and placed a telephone call to the offices of the Columbus City Attorney. I disclosed all relevant facts concerning what had transpired at the store to the City Attorney's office and sought advice as to what criminal charges would be appropriate. I was advised that the conduct engaged in by plaintiff and her husband would support filing charges of disorderly conduct."

In order to establish the asserted defense of advice of counsel, defendants were required to prove that Wheeler, in fact, sought the advice of counsel, that he fairly and impartially informed counsel of all the material facts bearing on the innocence or guilt of plaintiff, and that he followed counsel's advice in good faith. *Woodruff* v. *Paschen* (1922), 105 Ohio St. 396, at 398; *Ash* v. *Marlow* (1851), 20 Ohio 119, paragraph four of the syllabus; *Reenan* v. *Klein* (1981), 3 Ohio App. 3d 142, at 144; *Ashcraft* v. *Lodge* (1963), 118 Ohio App. 506, at 508 [26 O.O.2d 14]. Because Wheeler was a defendant, the potential in his statement for interest is evident. He did not identify the person to whom he spoke in the city attorney's office and, indeed, did not say that the person was an attorney at law. According to Wheeler, he made the call during evening hours. He said he disclosed all "relevant" facts. Construing most strongly in her favor plaintiff's statement in her affidavit concerning Wheeler having told her she was under arrest before he took her to the store's security office, one can reasonably infer that Wheeler had made up his mind to file charges against plaintiff prior to making a call to the city attorney's office. The general and conclusory nature of Wheeler's statement did not lend itself to being checked out and rebutted on summary judgment. No affidavit from a lawyer in the city attorney's office, supporting Wheeler's statement, was filed on behalf of defendants.

Accordingly, under these circumstances, Wheeler's affidavit was not adequate to establish that there was no genuine issue as to any material fact concerning his having relied upon the advice of counsel, and summary judgment should have been denied on plaintiff's claim for malicious prosecution.

The first assignment of error is sustained to the extent that the trial court dismissed plaintiff's claims for intentional infliction of serious emotional distress and invasion of privacy, and overruled to the extent that the trial court properly sustained the motion for summary judgment on plaintiff's claims for slander, false imprisonment, and false arrest; the second assignment of error is sustained, as the trial court erred in granting summary judgment on plaintiff's claim for malicious prosecution; the judgment of the trial court is affirmed in part and reversed in part; and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

STERN and BROWN, JJ., concur.

LEONARD STERN, and WILLIAM B. BROWN, JJ., retired, of the Supreme Court of Ohio, were assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.