ABELE, P.J., Concurs In Judgment & Opinion:
HARSHA, J., Concurs In Judgment:

Case No. 1806
Scioto County, (4th)
Decided April 12, 1990

R.C. 2505.02
Civ. R. 54(B)
Civ. R. 56

Kimble, Stevens, Young, Clark & Rodeheffer, Mr. Stephen Rodeheffer, Portsmouth, Ohio, for Appellants[1]

Crabbe, Brown, Jones, Potts & Schmidt, Mr. Vincent J. Lodico, Columbus, Ohio, for Appellee Stephen Appleton, M.D.

McCurdy, Johnson, Ruggiero, McKenzie & Bender, Mr. Daniel P. Ruggiero,, Portsmouth, Ohio, for Appellee The Mercy Hospital Corporation.

STEPHENSON, J.,

This is an appeal from a summary judgment entered by the Scioto County Court of Common Pleas in favor of Stephen Appleton, M.D., and The Mercy Hospital Corporation, defendants-appellees, on the medical malpractice complaint of Charles and Virginia Tolliver, plaintiffs- appellants.

Appellants assign the following as their sole assignment of error on appeal:

"The trial court committed error in determining that there was no genuine issue of fact as to whether or not the appellant, Charles Tolliver, had been administered Lidocaine."

On June 18, 1987, appellants filed a complaint naming Stephen Appleton, M.D., The Mercy Hospital Corporation, and Mercy Hospital Emergency Physicians Service as defendants and which averred, in pertinent part, as follows. On or about December 24, 1985, the defendants, acting individually and through their agents, provided medical care to appellant Charles Tolliver for the purpose of treating complaints of chest plain. During the December 24, 1985 admission, the aforementioned defendants were professionally negligent in that they failed to provide proper medical care to appellant Charles Tolliver. As a direct and proximate result of the

---

**Tolliver v. Appleton**
[Cite as 2 AOA 187]

---

defendant's negligence, appellant Charles Tolliver sustained physical and mental injuries and further incurred medical expenses. Appellants' complaint further averred a claim for relief in consortium for appellant Charles Tolliver's wife, appellant Virginia Tolliver. Appellants' complaint prayed for money damages.

On July 2, 1987, appellee The Mercy Hospital Corporation filed an answer which denied the majority of the averments contained in appellants' complaint.

On July 21, 1987 appellee Dr. Appleton filed an answer which similarly denied the majority of the averments of appellants' complaint. The record in the case at bar indicates that no answer or other responsive pleading was filed by defendant Mercy Hospital Emergency Physicians Service to appellants' complaint.

On August 20, 1987, appellee the Mercy Hospital Corporation filed answers to appellants' interrogatories, which indicated that during 1984, appellee Dr. Appleton had privileges in emergency medicine at Mercy Hospital. On April 21, 1988, appellants filed answers to appellee The Mercy Hospital Corporation's interrogatories which provided, in pertinent part, that appellant Charles Tolliver had been retired since 1975, that on December 24, 1985, he was a patient in the emergency room at Mercy Hospital in Portsmouth, Ohio, that he indicated to emergency room personnel at the hospital that he was allergic to Lidocaine, and that despite his warning, the emergency room personnel prescribed Lidocaine for him. In an affidavit filed with appellants' answers to interrogatories, appellant Charles Tolliver states as follows:

"1. On December 24, 1985, at approximately 8:20 a.m. I was a patient at the Mercy Hospital emergency room in Portsmouth, Ohio.

" 2. When I went to the emergency room I had complaints of chest pain and nausea.

" 3. During this visit to the emergency room a nurse whose name I do not remember gave me an injection through and IV line in my arm and I asked her what medication I had been given.

" 4. She said that I had been given Lidocaine and I responded by saying 'Oh my God, I'm in trouble now.'

" 5. Doctor Appleton was also present and responded by stating, 'Oh my God, he is allergic to it.'

" 6. After this I was given Procardia which was placed under my tongue."

On December 5, 1988, appellee, The Mercy Hospital Corporation filed a motion for summary judgment. On December 6, 1988, appellee Dr. Appleton filed a motion for summary judgment, attaching thereto the affidavits of himself and two nurses as well as medical records concerning appellant Charles Tolliver's December 24, 1985 emergency room visit at Mercy Hospital. Appellee Dr. Appleton stated in his affidavit that on December 24, 1985, he was performing emergency room services at Mercy Hospital when appellant Charles Tolliver was brought in complaining of severe nausea and pain under the left arm and left side of the neck since the prior evening, that his initial vital signs indicated a severely elevated blood pressure of 236/156, the he had listed an allergy to Lidocaine, and that he had a significant past history of cardiac problems, hypertension, and respiratory difficulties. Appellee Dr. Appleton further stated in his affidavit that at some point during his treatment of appellant Charles Tolliver, he ordered Lidocaine for his treatment, that a nurse informed appellee Dr. Appleton that appellant Charles Tolliver was allergic to Lidocaine, that appellant Charles Tolliver was then given Bretylol instead of Lidocaine, and that Lidocaine was never given to appellant Charles Tolliver at any time.

Betty Goodrich and Mary Ann Wakefield stated in their affidavits that they were registered nurses employed by appellee The Mercy Hospital Corporation and assigned to the emergency room of the hospital on December 24, 1985, that at about 8:20 a.m. on said date, appellant Charles Tolliver walked into the emergency room complaining of chest pain and nausea, and that at such time his blood pressure was 236/152. The nurses' affidavits further stated that appellant Charles Tolliver was initially administered nitroglycerine and procardia, whereupon he developed cardiac arrhythmia and his blood pressure dropped to 70/40, that although Lidocaine was ordered by appellee Dr. Appleton, it was never administered to the patient and that instead of Lidocaine, appellant Charles Tolliver was given bretylium brand name Bretylol, at which point he was transferred to the coronary intensive care unit of the hospital.

The medical records attached to appellee Dr. Appleton's motion for summary judgment provided as follows: The first page of the Mercy

Hospital "EMERGENCY RECORD" as well as the majority of the remaining pages of the medical records, noted that appellant Charles Tolliver was allergic to the drug Lidocaine. On the first page of the "EMERGENCY RECORD", appellee Dr. Appleton wrote "*Lidocaine Drip IV" in a space below that with the heading "ORDERS" and in the space with the heading "DOCTOR'S FINDINGS." The 'EMERGENCY ROOM NURSING NOTES" contained in the medical, records listed "*NTG", "*Procardia", "Dopamine drip" and "Breytol (sic) 250 mg given IVP" among its notations.

On December 14, 1988, appellants filed a motion contra appellees' motions for summary judgment, attaching thereto the previously filed affidavit of appellant Charles Tolliver. Appellees filed reply memoranda which stated in part that the medications that had a star next to their name were those administered to appellant Charles Tolliver on December 24, 1985. On February 9, 1989, the trial court issued a decision which stated that summary judgment should be granted "in favor of defendants." On March 1, 1989, the trial court entered summary judgment in favor of appellees. The March 1, 1989, judgment entry did not mention defendant Mercy Hospital Emergency Physicians Service and, furthermore, failed to include an express determination by the trial court under Civ. R. 54 (B) that there was "no just reason for delay" of entry of final judgment.

Appellants' sole assignment of error on appeal asserts that the trial court erred in determining that there was no genuine issue of fact as to whether or not appellant Charles Tolliver had been administered Lidocaine. Civ. R. 56(C) provides, in pertinent part, as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material facts; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St. 3d 144, 146; *Harless v. Willis Day Warehousing Co.* (1988), 54 Ohio St. 2d ,64, 66. The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment, *Mitseff v. Wheeler* (1988), 38 Ohio St. 3d 112, 115.

Appellant's complaint herein averred that appellees as well as defendant Mercy Hospital Emergency Physicians Service were guilty of medical malpractice. In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that such a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things. *Bruni v. Tatsumi* (1976), 4 Ohio St. 2d 127, paragraph one of the syllabus, *Tirpak v. Weinberg* (1986), 27 Ohio App. 3d 46, 48; *Cervelli v. Kleinman* (1983), Ohio App. 3d 247, 249. Moreover, where a hospital assumes a nondelegable duty such as the operation of an emergency room facility the hospital cannot contractually insulate itself from liability for acts of medical malpractice committed in its emergency room by entering into a contract with a third party whereby the third party is to operate the emergency room. *Griffin v. Matthews* (1987), 36 Ohio App. 3d 228.

Appellants essentially contend that the summary judgment evidence, when construed most strongly in appellant's favor pursuant to Civ. R. 56 (C), raised a genuine issue of fact as to whether appellees and/or their agents and employees administered Lidocaine to appellant Charles Tolliver on December 24, 1985 in the emergency room of Mercy Hospital in Portsmouth, Ohio after appellees had been advised that appellant was allergic to

Lidocaine.[2] The trial court, in its February 8, 1989 decision stated, in pertinent part, as follows with respect to appellees' summary judgment evidence:

"Emergency room records, including doctor's and nurse's notes. These substantiate the fact that Dr. Appleton originally ordered Lidocaine, when informed that plaintiff was allergic to that drug, Bretylol not Lidocaine was given to plaintiff.

"Although Plaintiff may believe that he heard something to the contrary that does not alter the facts. Since he was not given Lidocaine he could not have suffered the injuries complained of.

"Upon consideration of all the materials filed, construed most strongly in favor of plaintiffs, the Court finds that there is no genuine issue as to any material fact, and that reasonable minds can come to but one conclusion and that conclusion is adverse to plaintiffs."

The gravamen of the trial court and appellees' position herein is essentially that appellant Charles Tolliver's affidavit was insufficient to raise a genuine issue of material fact as to whether or not he was given Lidocaine on December 24, 1985, since the affidavits of Dr. Appleton and the two registered nurses were "supported" by the filed emergency records. However, the Supreme Court of Ohio has noted as follows:

"Summary judgment is a procedural device to terminate litigation to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against from moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion." *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, at 2; see also *Viock v. Stowe-Woodward Co* (1983), 13 Ohio App. 3d 7.

Resolution of a motion for summary judgment does not include trying the credibility of witnesses. *Killilea v. Sears Roebuck & Co.* (1985), 27 Ohio App. 3d 163, 167. Summary judgment is not a substitute for the trial of disputed fact issues, and, accordingly, the court cannot try issues of fact on a Civ. R. 56 motion but is only empowered to determined whether there are issues of material fact to be tried. See, e.g. 10 Wright, Miller & Kane, Federal Practice and Procedure (1983), 574-575, Section 2712; *Viock, supra* at p. 15.

As noted by the Tenth District court of Appeals in *Killilea, supra,* at p. 167-168:

"Credibility concerns normally arise in summary judgment proceedings when the affidavits or depositions of witnesses are in conflict concerning a fact to be proved. Under these situations, it is evident that resolution of the factual dispute will depend, at least in part, upon the credibility of the witnesses, and trial courts routinely deny summary judgment. However, credibility concerns can also be present where, on the face of evidentiary documentation supporting a motion for summary judgment, the moving party's evidence on a factual issue appears to be uncontroverted. This will be the case where, under the circumstances, credibility manifestly is critical to a determination that there is no genuine issue as to the existence of that fact."

The Civ. R. 56 (C) summary judgment standard frequently precludes summary judgment in professional liability, i.e. medical malpractice, cases even where the alleged conduct is undisputed. *Whiteleather v. Yosowitz* (1983), 10 Ohio App. 3d 272, 274. In the case at bar, in construing the evidence most strongly in appellants' favor, the Civ. R.56 (C) evidence herein indicates that: (1) On December 24, 1985, appellant Charles Tolliver was a patient at the Mercy Hospital Emergency Room (all of the affidavits and the medical records); (2) Appellant Charles Tolliver advised appellees that he was allergic to Lidocaine (all of the affidavits and the medical records); (3) Appellee Dr. Appleton ordered Lidocaine for appellant Charles Tolliver (appellees' affidavits); (4) A nurse told appellant that he had been given Lidocaine (appellant Charles Tolliver's affidavit); and (5) Appellee Dr. Appleton expressed shock that the nurse had given appellant Lidocaine (appellant Charles Tolliver's affidavit.)

Appellant Charles Tolliver's affidavit statements regarding the nurse's statement that he had been given Lidocaine as well as appellee Dr. Appleton's subsequent expression of shock were proper pursuant to Civ. R. 56(E) in that they were admissible to show the truth of the statements since they were non-hearsay pursuant to Evid. R. 801(D)(2)(a) and (d), that is, an admission by a party opponent (Dr. Appleton) and a vicarious statement of an employee (the nurse) made within the scope of her employment. Therefore, appellant Charles Tolliver's affidavit's statement that a nurse advised him that he had been given Lidocaine was admissible to prove the truth of what the

nurse said, i.e. that he had been given Lidocaine. Giannelli, Ohio Evidence Manual (1989), 16, Section 801.14.

In this regard, the trial court and appellees' reliance upon the emergency room records to state that there is no genuine issue of material fact as to whether or not appellant received Lidocaine was patently erroneous. Medical records cannot be given a status of establishing validity of the facts stated therein as a matter of law. Indeed, since the records herein were completed by appellees and their employees, they are subject to the same credibility determinations as their filed affidavits. Cf., e.g. *Killilea, supra.* Moreover, appellees argued both below and on appeal that the emergency room records indicated that only certain medications with asterisks were given to the patient; however, the first page of the emergency room records indicates an asterisk in front of "Lidocaine Drip IV." Accordingly, in that the trial court erroneously elevated the emergency room records to an evidentiary status above that the other Civ. R.56(C) evidence, such as affidavits, and essentially decided an issue dependent upon credibility of the affidavits and those people who prepared the medical records, the entry of summary judgment in favor of appellees was manifestly erroneous. *Killilea, supra; Viock, supra.*

However, in order to reverse the entry appealed from herein, the March 1, 1989 entry must constitute a final, appealable order. An order of a court is a final, appealable order only if the requirements of both Civ. R. 54(B) and R.C. 2505.02 are met. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St. 3d 86, syllabus. An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ. R. 54(B) in order to be final and appealable. *Noble v. Colwell* (1989), 44 Ohio St. 3d 92, syllabus.

Civ. R. 54(B) provides, in pertinent part, as follows:

"When *more than one claim* for relief is presented in an action. . . or when *multiple parties* are involved, the court may enter *final judgment* as to one or more but fewer than all of the claims or parties only upon an *express determinations that there is no just reason for delay.* In the *absence of such determination,* any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall *not terminate the action* as

to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

In the case at bar, appellants' complaint contained a claim against Mercy Hospital Emergency Physicians Service. However, the aforementioned party, which was served a summons, was never dismissed from the proceedings below, and appellants' claim against it was never resolved. Furthermore, the March 1, 1989 entry did not specify that appellants' claim for relief against the aforementioned defendant was, like the claims against appellees, being dismissed. Indeed, the entry did not list defendant Mercy Hospital Emergency Physicians Service in the signature lines for the parties and their counsel. It listed Robert K. McCurdy and Daniel P. Ruggiero as attorneys for appellee The Mercy Hospital Corporation. The March 1, 1989 entry which granted summary judgment in favor of appellees did not contain an express determination of "no just reason for delay." Accordingly, we are without jurisdiction to consider the instant appeal.[3]

It follows that what we have stated with respect to the merits is necessarily dicta. However, for judicial economy in the event of another appeal, we would strongly urge the trial court to reconsider its grant of summary judgment in favor of appellees herein, such entry of judgment being subject to revision pursuant to Civ. R. 54(B). Accordingly, for all of the foregoing reasons, the instant appeal is dismissed.

*Appeal dismissed.*

HARSHA & GREY, JJ., Concur

---

[1] Appellants were represented initially by Dennis C. McCarthy and Leonard c. Elder and subsequently by Rick L. Faulkner during the proceedings below.

[2] Lidocaine, in its form pertinent herein, i.e. lidocaine hydrochloride, is a white powder helpful in treating loss of rhythm of the heart beat, a condition described as arrhythmia. 2 Attorneys Dictionary of Medicine L-37 (3d Ed).

[3] We would further note that even if the trial court had entered summary judgment in favor of defendant Mercy Hospital Emergency Physicians Service in its March 1, 1989 entry, such entry would have been erroneous since Civ. R. 56 does not authorize courts to enter summary judgment in

favor of a non-moving party. *Marshall v. Aaron* (1984) 15 Ohio St. 3d 48, syllabus; *Yurista v. Nationwide/Mut. Ins. Co.* (1985), 18 Ohio St. 3d 326, 330. In the case at bar, the defendant Mercy Hospital Emergency Physicians Service never filed a motion for summary judgment, and thus, the March 1, 1989 entry could not have properly terminated appellants' claim against it.