### Loyal Oak Swim Club v. Norton
*[Cite as 2 AOA 512]*

*Case No. 14305*
*Summit County, (9th)*
*Decided April 25, 1990*

*R.C. 2744.02*
*R.C. 2744.03*

R. David Briggs, Attorney at Law, 900 CitiCenter Bldg., 146 S. High St., Akron, OH 44308 for Plaintiff.

Chris T. Nolan, Attorney at Law, 300 Courtyard Square, 80 S. Summit St., Akron, OH 44308 for Defendants.

HAYES, J.
Plaintiff-appellant, Loyal Oak Swim Club, Inc. ("Loyal Oak"), appeals the trial court' order granting summary judgement in favor of the City of Norton, three of its police officers, and its City Council members. We reverse.

During the summer of 1988, Loyal Oak and its president, Steve Gustinski, received numerous complaints that objectionable behavior was occurring at Loyal Oak. On August 7, 1988, two police officers entered Loyal

Oak premises and arrested four patrons. On August 8, 1988, three other arrests occurred at Loyal Oak. The citizen complaints were addressed to Norton City Council members personally and at public meetings. At an August 29, 1988 meeting, citizens aired their views on Loyal Oak with members of the media present. When membership at Loyal Oak diminished, Loyal Oak was forced to close its business.

#### ASSIGNMENT OF ERROR
"The Summit County Court of Common Pleas erred in granting defendants' motion for summary judgment for reason that there exists genuine issues of material fact which were not construed by the court in a light most favorable to the plaintiff-appellant."

Summary judgment shall not be rendered unless there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. *Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198, 201; Civ. R. 56(c). Accordingly, an order granting summary judgment will be upheld where, construing the evidence most strongly in favor of the non-moving party, the record discloses no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327. An appellate court must apply the same standard as the trial court in reviewing the granting of summary judgment. *Id.*.

The trial court's order granting summary judgment in favor of the City of Norton, three of its police officers, and its City Counsel members, stated that they were immune from liability pursuant to R.C. 2744.01 *et seq.*

In *Carbonen* v. *Overfield* (1983), 6 Ohio St. 3d 212, the Supreme Court of Ohio held that the defense of sovereign immunity was not available to a board of education in an action for damages for injuries allegedly caused by the negligence of its employees. In response to this decision, the Legislature enacted Sub. H.B. No. 176 which, in a three tier approach, outlines when a political subdivision and its employees may be liable.

A political subdivision is now generally not liable for an injury or loss caused by an act or omission of the political subdivision or its employees in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). However, it is liable for such injury or loss if it fits one of the categories contained in R.C.

2744.02(B). R.C. 2744.03 contains defenses or immunities for subdivisions and their employees, which would otherwise be held liable under R.C. 2744.02(B).

R.C. 2744.01(C)(1) and (2) (f) provide:

"(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section ***.

"(2) A 'governmental function' includes, but is not limited to, the following:
"***.

"(f) Judicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functional;"
"*** "
The provision of a police force is also a governmental function. R.C. 2744.01(C)(2)(a).

R.C. 2744.02 (B)(4) provides:

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental of proprietary function, as follows:
"***.

"(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses ***."

R.C. 2744.03(A)(1) and (6) provide in part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"(1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.

"***.

"(6) In addition to any immunity or defense referred to in division (A) (7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment of official responsibilities:

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;"
"***."

In the trial courts's order granting summary judgement in favor of the City of Norton and its Council members, the court determined that the public meetings were conducted as part of its legislative duties to address the complaints of Council's constituents and thus were engaged in a governmental function. The trial court also determined that the Charter of the City of Norton ("Charter") did not require minutes to be taken at this public meeting.

Section 3.12 and Section 3.13 of the Charter provide for two forms of Council meetings.

"SECTION 3.12 REGULAR MEETINGS.

"Council shall meet at such times as may be prescribed by its rules, regulations, by-laws, or by resolution or ordinance, except that it shall hold regular meetings at least once during each calendar month. All regular meetings of Council shall be held at the Council Chambers and shall be open to the public.

"SECTION 3.13 SPECIAL MEETINGS.

"Special meetings of Council may be called as provided by its rules, regulation, by-laws, or by resolution or ordinance. In the absence of any such provisions, special meetings may be called by the Clerk of Council upon the written request of the Mayor, or the President of Council, or any three members of Council, and written notice of any such meeting shall be served personally upon each Councilman and the Mayor or left hours prior to such member [sic.]. Service of notice of any special meeting shall be deemed conclusively to have been waived by the mayor or by any Councilman who shall be present at such meeting. All special meetings of Council shall be held at Council Chambers and shall be open to the public."

City of Norton Adm. Code ("Administration Code") Section 220.03 further provides:

"220.03 MEETINGS.

"(a) Council shall meet in regular session at the Council Chambers, Safety Administration Building, on the second and fourth Monday of each month at 7:00 p.m. except in the months of July, August and December when the Council President shall establish either the second or fourth Monday as the date for regular session for July, August and December. The regular

session shall be called to order, the salute to the flag given and the invocation given, then the regular session may be recessed for the purpose of Council going into a Committee of the Whole meeting after which Council shall return to the regular session for the purpose of conducting City business. (Ord. 54-1981. Passed 6-23-81.)

"(b) The Mayor or any three members of Council may call special meetings of Council upon at least twelve hours of notice to each member, served personally or left at the member's usual place of residence.

(Ord. 50-1962. Passed 4-26-62.)"

The Rules for these meetings are contained in Administrative Code Section 220.04 and specifically mention the existence of minutes in the following subsections:

Subsection (d) provides:

"(d) *Roll Call.* The Clerk shall call the roll of the members, and the names of those present shall be entered in the minutes."

Subsection (f) provides in part:

"(f) *Order of Business.* All meetings of Council shall be open to the public. Promptly at the hour set by law on the day of each regular meeting, the members of Council, Mayor, the Clerk and the Solicitor shall take their regular stations in the Council Chambers, and the business of Council shall be taken up for consideration and disposition in the following order:

"(1) Approval of minutes of previous meeting;"

"***."

Subsection (g) provides:

"(g) *Reading of the Minutes.* Unless a reading of the minutes of a Council meeting is requested by a member of Council, such minutes may be approved without reading if the Clerk has previously furnished each member with a copy thereof."

Administrative Code Section 220.02(B) provides:

"(b) The duties of the stenographer shall be to attend and to take and reproduce the minutes of Council meetings, Planning Commission meetings and Board of Zoning and Buildings Appeals meetings, and such other duties as may be assigned to such stenographer by Council. (Ord. 15-1964. passed 4-13-64.)"

Administrative Code Section 220.02(B) does not specify which type of meeting, whether regular, special, or both, the stenographer would attend and transcribe. However, Administrative Code Section 220.03 includes both regular and special meetings under the heading "meetings".

Moreover, in the City of Norton's answer to Loyal Oaks's interrogatories number one and two, the City answered that minutes are taken for both types of meetings.

Accordingly, the stenographer should have attended the meeting on August 29, 1988, had it been a special meeting, and taken and reproduced the minutes for this meeting. In its answer to interrogatory number five, the City states that there were no special meetings held during August, 1988.

Accordingly, we hold that there remains a genuine issue of fact as to whether the council members were acting in their official capacity during the August 29th Council "meeting" when that meeting failed to comply with the Charter and Administrative Code.

Charter Section 3.17 provides:

"All legislative action by the Council shall be by ordinance or resolution introduced in written or printed form, and on the passage of each ordinance or resolution the vote shall be taken by yeas and nays entered upon the journal."

There is no Charter provision for quasi-legislative functions.

In Steve Gustinski's affidavit, which supports Loyal Oak's memorandum in opposition to summary judgment, he asserted that Loyal Oak's problems with the City and the Norton Police Department began when a Norton firefighter was suspended as a result of an argument with affiant; that the officers entered the premises without permission or warrants on several occasions, and that because of fence and screening around the pool area, any criminal activity could not have been visible to the officers; that vandalism occurred, including damage to the business sign, damage to the fence, snack, bar, pool, lights and pool equipment, and that the police officers told him that they could do nothing about the vandalism other than to file a report. Gustinski's affidavit also stated that the Norton City Council members conspired with residents by calling special meetings and informing the media; that the meetings were called without any legislative intent but instead to publish residents' unfounded allegations to gain public support for boycotting Loyal Oak; that the Council members were motivated by financial interest in that if the pool closed, the City could purchase the property for a reduced price; that there was no investigation to substantiate the complaints before the meeting was called; and that Loyal

Oak was never given an opportunity to speak in its defense concerning the untrue allegations.

In support of their motion for summary judgment, Council members executed identical affidavits, stating that all comments concerning Loyal Oak were made for the purpose of investigating citizen complaints with the possibility of drafting legislation to remedy the situation which was causing the complaints; that the comments were made during the meeting and were not made in bad faith, maliciously, or in a wanton or reckless manner; and that they had no knowledge that any of the comments were false or acted with reckless disregard as to whether the comments were false.

While the police officers' actions or failure to act would normally be an exercise of their discretion as part of their duties and responsibilities as police officers, and thus provide immunity from liability for both the City and the police officers, that is not the case if the officers acted outside the scope of their employment, or in bad faith, with a malicious purpose, or in a reckless manner. R.C. 2744.03(A) (3) and (a).

Where an issue turns upon the credibility of a witness because his testimony must be believed to resolve the issue, and the surrounding circumstances place the credibility of the witness in question, the matter should be resolved at trial, where the trier of fact has an opportunity to observe the demeanor of the witness. *Killilea* v. *Sears, Roebuck & Co.* (1985), 27 Ohio App. 3d, 167.

Loyal Oak, by its president's affidavit, presented evidence that the meeting held on August 29, 1988, was not intended for legislative action, but that the meeting's purpose was to gather support to close Loyal Oak down by spreading rumors so that the City would be able to purchase the property at a reduced price. Loyal Oak also correctly asserted that minutes of special meetings are required in order to hold a meeting in compliance with the Charter and the Administrative Code. Loyal Oak also presented evidence that the police officers were acting maliciously and in bad faith because of Gustinski's participation in the suspension of another city employee. While defendants obviously contradict these assertions, the resolution of these issues are for the trier of fact.

Accordingly, we hold that genuine issues of fact remain to be litigated in order to establish whether these defendants are entitled to immunity from liability pursuant to R.C. 2744.01 *et seq.*

The assignment of error is well taken.

(HAYES, J., Judge of the Domestic Relations Court of Portrage County, sitting by assignment pursuant to Article IV, Section 5(A) (3), Constitution).

*Judgment reversed and cause remanded.*