{¶ 102} I respectfully dissent from the majority's opinion with respect to appellant's fourth assignment of error, her intentional infliction of emotional distress (IIED) claim.
 {¶ 103} In its analysis of the third assignment, the majority concludes that appellant's testimony, when construed most strongly in her favor, does establish willful and wanton conduct on the part of the EMTs and Officer Lewis. The majority then decides in its assessment of the fourth assignment that this same willful and wanton conduct was not sufficiently outrageous on the part of the EMTs or Officer Lewis. I disagree.
 {¶ 104} With respect to Officer Lewis, appellant testified that when he arrived at her house, she was at her front door. According to appellant, Officer Lewis ran toward her, pushed her back into her house, pushed her onto her dining room chair, and handcuffed her. She feared that she was being falsely arrested or that he was at the wrong house. She stated that she was having difficulty breathing, so she could not talk, and thus, could not ask him why he was doing this to her. She later recalled that Officer Lewis continued to intermittently handcuff her, and that while she could not breathe, he and the EMTs "all kind of enjoyed this handcuffing going on and on."
 {¶ 105} It is this writer's opinion that if a police officer pushes an innocent person back into her home, pushes her against a chair and handcuffs her, that it could be sufficiently outrageous conduct to establish a claim of IIED. Whether this testimony would be believed over the testimony of the officer is for a fact finder to determine.[8]
 {¶ 106} With respect to the EMTs, the majority concludes that the alleged statement made by one of them, "let's watch her die," is shocking, but does not rise to the level of extreme and outrageous. I strongly disagree.[9]
 {¶ 107} As the Supreme Court of Ohio stated in Yeager v. Loc. Union20 (1983), 6 Ohio St. 3d 369, 374-375:
 {¶ 108} "`(* * *) It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'"
 {¶ 109} If a person was having severe breathing distress, pleading to an EMT, "please, I'm dying," and an EMT responded with, "she said she is dying, let's watch her die," in this writer's view, it could well provide a basis for a fact finder to conclude that such conduct was "outrageous." It is not for this court, or the trial court for that matter, to weigh the evidence and decide whether or not this actually happened.
 {¶ 110} "Resolution of a motion for summary judgment does not include trying the credibility of witnesses. If an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question * * * then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness." Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163,167.
 {¶ 111} Furthermore, I disagree with the majority's conclusion that the affidavits of Susan Loparo ("Loparo") and Lynn Maloney ("Maloney") lack any evidential value. Their testimony sufficiently established and corroborated, at least to withstand summary judgment, the severity of appellant's emotional distress.
 {¶ 112} The Supreme Court of Ohio, in Paugh, supra, held that expert testimony is not necessary to determine if an emotional injury is indeed serious enough in degree to establish emotional distress. Id. at 80. Lay witnesses who are closely acquainted with the plaintiff are competent to testify to substantial changes in plaintiff's emotional or habitual makeup that they personally observe. Id. Whether this testimony is credible is a question for the trier of fact. Id.
 {¶ 113} Loparo averred that she has known appellant for over forty years and has been a very close friend to her throughout this time. According to Loparo, she has seen appellant on a weekly basis since this incident and it has caused appellant to have difficulty "coping with everyday stress." Further, she stated that she has personally observed appellant become depressed, very stressed, and distraught since this incident.
 {¶ 114} Maloney, who has also been a close friend to appellant for over forty years, claims that since the incident, appellant has become extremely distraught, fearful, nervous, under extreme stress, and depressed as a result of the emotional strain this incident caused appellant. She further stated that appellant has continued to suffer from the effects of this incident, including problems which have affected her ability to cope with every day matters.
 {¶ 115} These affidavits, which are proper evidence under Civ.R. 56(E) to withstand summary judgment, create a genuine issue of material fact as to whether appellant's emotional distress was sufficiently severe and debilitating to establish a claim of IIED.
 {¶ 116} As for proximate cause, appellant's deposition testimony and affidavit sufficiently establish a genuine issue of material fact regarding this element of the claim. Appellant claims that the incident, in which she believed that she was going to die at the hands of the very people she called to help her, has caused her to be extremely distressed, have nightmares, flashbacks, difficulty sleeping, all of which are affecting her ability to function in a normal manner and cope with daily life. She further states that she has had to obtain counseling to help her cope with the anxiety this incident hascaused her.
 {¶ 117} I agree that appellant was experiencing an acute asthma attack, ultimately suffered a heart attack, and spent two days in the hospital. I also agree that these events could — and would — cause someone to experience emotional distress. These facts however, in and of themselves, do not relieve Officer Lewis and the EMTs of liability if they also caused appellant severe and debilitating emotional distress due to their alleged outrageous conduct. Construing the evidence most favorably toward appellant, reasonable minds could differ as to the proximate cause or causes of her emotional distress and damages or losses flowing from it.
 {¶ 118} Appellant's affidavit, as well as the affidavits of two of her long-time friends, Susan Loparo ("Loparo") and Lynn Maloney ("Maloney"), establish a genuine issue of material fact as to whether appellant's mental injuries were sufficiently severe and debilitating, and were the proximate cause of her emotional distress. As such, I would reverse and remand to the trial court appellant's IIED claim with respect to Officer Lewis and the EMTs, as well as the city of Eastlake through respondeat superior liability.
[8] The trial court stated that it "recognize[d] Plaintiff's affidavit testimony concerning Patrolman Lewis allegedly entering Plaintiff's home before anyone else arrived and then inexplicably pushing Plaintiff into a chair and handcuffing her with her hands behind her back." However, the trial court then treated appellant's testimony as being a "self-serving affidavit containing no more than bald contradictions." In doing so, the trial court inappropriately "found" that the testimony of the EMTs and Officer Lewis, that they all arrived at the scene simultaneously, sufficiently overcame appellant's testimony. However, appellant's deposition testimony was more than "a self-serving affidavit" submitted to contradict the evidence offered by the moving party to avoid summary judgment. It was not for the trial court to "find" that the testimony of the EMTs and Officer Lewis was more believable than appellant's.
[9] Willful conduct is equivalent to "intent" for purposes of establishing a claim of intentional infliction of emotional distress. See Meyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82, 92;Jylanki v. Chaaouane (Mar. 13, 1978), 11th Dist. No. 6-194, 1978 Ohio App. LEXIS 10608, at 2.