This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Geneva and Edward Irvine ("the Irvines"), appeal the decision of the Summit County Court of Common Pleas, entering summary judgment in favor of appellees. We affirm.
 I.
On May 17, 1999, Edward and Geneva Irvine filed a complaint in the Summit County Court of Common Pleas, case number CV 99 05 1917, naming the Akron Beacon Journal, Janet C. Leach, the Vice President and Editor of the Akron Beacon Journal, and Ed Meyer, a reporter for the Akron Beacon Journal, as defendants ("Irvine I"). The Irvines asserted, inter alia, a claim of invasion of privacy, which was based upon the defendants' alleged harassment of the Irvines during their investigation into whether Mr. Irvine, then the Chief of Police for the City of Akron, physically assaulted his wife, Ms. Irvine. The newspaper published a series of articles on the topic prior to the complaint in Irvine I being filed.
During discovery in Irvine I, the defendants requested the release of certain medical records from St. Thomas Hospital ("the medical records"), where Ms. Irvine sought emergency room treatment for injuries allegedly inflicted by her husband. The Irvines moved to limit discovery of these medical records. In an order journalized on July 2, 1999, the trial court denied the Irvines' motion to limit the discovery of the medical records, writing:
 "Although the Court denies the Plaintiffs' objections on the issue of the discovery of medical records, the Court recognizes that such medical records might be of a sensitive nature. It is now ordered that the medical records be initially presented to the Court for an incamera [sic.] inspection to determine if any of the records are of such a sensitive nature. At that point, the Court will make a determination of whether such information should be sealed from public inspection and if further hearings on the matter are required."
The trial court conducted a status conference on September 16, 1999, during which several discovery disputes, including the medical records, were discussed. On September 23, 1999, the trial court issued an order memorializing the status conference, in which the trial court ordered "[t]hat the Plaintiffs provide any and all medical records of Plaintiff Geneva Irvine from St. Thomas Hospital." At some point, the Irvines produced the medical records for the court's inspection. Thereafter, Ronald Kopp, an attorney for the law firm of Roetzel Andress, L.P.A., who was representing the defendants in Irvine I, received a telephone call from the trial court's chambers informing him that he could pick up the medical records. The trial court placed no restrictions on the use of the records. On September 24, 1999, the Irvines voluntarily dismissed their case without prejudice.
After receiving the medical records, Mr. Kopp shared them with his clients. The medical records included entries regarding the treatment received by Ms. Irvine on January 28 and October 15, 1998. The records indicated that, on those dates, Ms. Irvine told hospital personnel that she sustained injuries as a result of being physically assaulted by her husband. The newspaper wanted to publish an article based in part upon the information contained in the medical records.
Accordingly, after the dismissal of Irvine I, Mr. Kopp hand-delivered a letter dated October 1, 1999 to the trial court and faxed a copy of the letter to the Irvines' attorney. The letter regarded the publication of the information contained in the medical records, stating in pertinent part:
 "Regarding the medical records Your Honor released to me approximately a week ago * * *, I am not aware of any order requiring those records to be maintained by me as confidential. Indeed, before their release, you reviewed the medical records in camera in order to redact irrelevant or highly sensitive information. Nonetheless, my client and I want to make certain that we are complying in every respect with both the letter and the spirit of any of the Court's orders. Therefore, I have prohibited my client from using any information contained in these records for news purposes[.]
"* * *
 "Though there is nothing which would prohibit my client from utilizing the information contained in the medical records at once, I have instructed them not to use that information until after October 5 at 5:00 p.m. in order to make certain that I am not offending the Court in some manner. If Your Honor has a concern she would like to discuss, I would be available to come to chambers with [the Irvines' attorney] at anytime on October 4 or October 5."
The Irvines' counsel did not respond to the letter.
At approximately the same time, the defendants moved for relief from a previously issued protective order, which prohibited the newspaper from publishing certain information obtained during discovery, specifically the portions of the Irvines' depositions relating to the domestic abuse. This protective order did not address or prohibit the publication of the medical records. On October 5, 1999, the trial court denied the motion and ruled that any information that was previously placed under protection by the court remained under protection.
On the same day, the Irvines refiled their complaint in case number CV 99 10 3998 ("Irvine II"). On October 6, 1999, Mr. Meyer, a reporter for the Akron Beacon Journal, contacted LaDonna Tilley, a nurse, to inquire about Ms. Irvine's visit to the emergency room on January 28, 1999. Specifically, Mr. Meyer sought to confirm Ms. Tilley's notes in the medical records, which stated that "alleges assault by HUSB" meant that Ms. Irvine alleged she was assaulted by her husband. Ms. Tilley confirmed this fact. She also provided Mr. Meyer with other information.
On October 8, 1999, the newspaper published an article, which was based in part on the medical records and which focused on the allegations of domestic violence surrounding Mr. Irvine. The Irvines immediately filed a motion requesting that the defendants appear and show cause why they should not be held in contempt of the trial court's July 2 and 13, 1999 orders.[1] On August 28, 1999, the Irvines amended their motion to include Roetzel Andress and Mr. Kopp.[2] On December 12, 2000, the trial court ruled that the medical records were not placed under seal by the court and that, although "Attorney Kopp's decision to release these records to his client [wa]s a matter of concern to the Court, [it] was not a violation of a Court Order."
As a result of the publication of the October 8, 1999 article, the Irvines filed a complaint in the Summit County Court of Common Pleas, naming as defendants Mr. Kopp, Roetzel Andress, the Akron Beacon Journal, Mr. Meyer, Keith McKnight, and Kim Hone-McMahan.[3] The Irvines brought the following claims against the defendants: 1) invasion of privacy by publication, 2) inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a hospital or physician has learned within the physician-patient relationship, 3) fraud, 4) violation of Title 23 of the Ohio Revised Code, and 5) intentional infliction of emotional distress. On February 20, 2001, Mr. Kopp and Roetzel Andress (collectively referred to as "the law firm") moved for summary judgment on all of the claims against them. The Irvines responded in opposition. In a judgment journalized on May 16, 2001, the trial court entered summary judgment in favor of the law firm. The trial court, however, did not utilize Civ.R. 54(B) language in its decision.
On July 10, 2001, the Akron Beacon Journal, Mr. Meyer, Mr. McKnight, and Ms. Hone-McMahan (collectively referred to as "the newspaper") moved for summary judgment. The Irvines responded in opposition to the motion. On October 9, 2001, the trial court granted summary judgment in favor of the newspaper, thereby disposing of all claims against all parties. This appeal followed.
 II.
The Irvines assert six assignments of error for review. We will discuss each in due course, consolidating the second and fourth assignments of error to facilitate review.
 Summary Judgment
As relevant to this appeal, pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v.Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 A. First Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on Appellants' claim of invasion of privacy by publication."
In their first assignment of error, the Irvines assert that the trial court erred in granting summary judgment in favor of appellees on the invasion of privacy by publication claim. We disagree.
To recover for the tort of invasion of privacy by publication of private facts, the following elements must be shown: (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public. Killileav. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 167; see, also, Earlyv. The Toledo Blade (1998), 130 Ohio App.3d 302, 342. Significantly, a newspaper publishing legitimate news is ordinarily not liable under this tort. Killilea, 27 Ohio App.3d at 166-67; Early, 130 Ohio App.3d at 342.
In their respective motions for summary judgment, both the newspaper and the law firm argued that the allegations of domestic abuse against the chief of police and the police department's investigation into such allegations were matters of legitimate public concern. Both defendants pointed to portions of the record demonstrating this fact. Additionally, both directed the trial court's attention to the Early decision, in which the Sixth District Court of Appeals held that the manner in which law enforcement officials handled complaints of domestic violence perpetrated by police officers was a matter of legitimate public concern. Id. at 345.
In response, the Irvines argued that, while the allegations of domestic violence perpetrated by the police chief and the investigation of such allegations may have been of legitimate public concern, Ms. Irvine's confidential medical records were not of legitimate public concern. We disagree with the Irvines' argument. As previously discussed, to maintain a cause of action for invasion of privacy by publication of private facts, "[t]he matter publicized must not be a legitimate concern to the public." (Emphasis added.) Killilea, 27 Ohio App.3d at 167. Here, the newspaper published an article about how Ms. Irvine reported to hospital personnel that she had been physically assaulted on two separate occasions by her husband, then the chief of police. The article also discussed the official investigation into such allegations. These matters were newsworthy. See Early, supra. Moreover, the newspaper legitimately obtained the medical records through discovery conducted in Irvine I. The Irvines did not request and the trial court did not order the records be sealed or otherwise protected. Accordingly, we conclude that the trial court properly granted summary judgment in favor of the appellees on the Irvines' invasion of privacy by publication of private facts claim. The Irvines' first assignment of error is overruled.
 B. Second Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on Appellants' claim of invasion of privacy via contact with medical providers."
 Fourth Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on Appellants' claim of a violation of Title 23 of the Ohio Revised Code."
In their second and fourth assignments of error, the Irvines assert that the trial court erred in granting summary judgment in favor of appellees on the Irvines' claims of 1) inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a hospital or physician has learned within the physician-patient relationship and 2) a violation of Title 23 of the Ohio Revised Code.[4] We disagree.
According to the Irvines' complaint, both claims are premised upon the defendants allegedly inducing the unauthorized disclosure of confidential medical information from the hospital and its medical providers. Although the Irvines set forth two separate claims in their complaint, the Irvines' R.C. 2317.02(B) claim is subsumed by the tort of inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a hospital or physician has learned within the physician-patient relationship.
In Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, paragraph one of the syllabus, the Ohio Supreme Court recognized that a physician or hospital may be held liable for "the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." The Ohio Supreme Court further concluded that "[a] third party can be held liable for inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." Id. at paragraph three of the syllabus. To establish liability for the tort of inducing a breach of patient confidence, the plaintiff must show that:
 "(1) the defendant knew or reasonably should have known of the existence of the physician-patient relationship, (2) the defendant intended to induce the physician to disclose information about the patient or the defendant reasonably should have anticipated that his actions would induce the physician to disclose such information, and (3) the defendant did not reasonably believe that the physician could disclose that information to the defendant without violating the duty of confidentiality that the physician owed the patient." Id.
In this case, R.C. 2317.02 is relevant in determining whether the disclosures complained of were unauthorized. Pursuant to R.C. 2317.02(B), a physician is generally precluded from testifying concerning a communication made by the patient to the physician or the physician's advise to the patient. R.C. 2317.02(B)(1). The testimonial privilege, however, does not apply and a physician may be compelled to testify or submit to discovery if the patient files a civil action. R.C.2317.02(B)(1)(a)(iii). R.C. 2317.02(B)(3)(a), however, places restrictions on what communications may be discovered under R.C.2317.02(B)(1). Specifically, if the testimonial privilege does not apply as provided in R.C. 2317.02(B)(1)(a)(iii), a physician may be compelled to testify or to submit to discovery only as to communications that relate causally or historically to the physical or mental injuries that are relevant to issues in the civil action. R.C. 2317.02(B)(3)(a).
 The Medical Records
In accordance with R.C. 2317.02, the trial court in Irvine I ordered the Irvines to produce the medical records. Consequently, Ms. Irvine executed a written release of the medical records. At that point, the physicians and the hospital were authorized to release the medical records and did not breach any duty of patient confidentiality by releasing them. Accordingly, construing the evidence most strongly in the Irvines' favor, reasonable minds could not conclude that the newspaper and the law firm induced the unauthorized disclosure of the medical records.[5]
 The Nurse
We turn to the Irvines' claim that the defendants induced a breach of patient confidence when Mr. Meyer, a reporter, obtained the name of an emergency room nurse, Ms. Tilley, from the medical records and subsequently interviewed her. In support of its motion for summary judgment, the law firm presented evidence that Mr. Kopp never directly contacted Ms. Irvine's medical providers nor was aware that the newspaper had planned to do so. This evidence demonstrated that the law firm did not intend to induce a breach of patient confidence.
In response, the Irvines presented evidence that the newspaper had planned to publish an article based in part on Ms. Irvine's medical records and that Mr. Meyer had reviewed and obtained Ms. Tilley's name from the medical records while at Mr. Kopp's law office. Based on the foregoing, the Irvines claimed that the law firm facilitated the newspaper's alleged inducement of a breach of patient confidence by sharing the medical records. However, as previously discussed, the law firm did not violate any court order in sharing the medical records with the newspaper. Further, the Irvines have failed to adduce any evidence demonstrating that the law firm intended to induce a breach of patient confidence or should have anticipated that its actions would induce Ms. Tilley to disclose confidential information. Accordingly, granting summary judgment in favor of the law firm on this claim was proper.
In its motion for summary judgment, the newspaper presented the affidavit testimony of Mr. Meyer and asserted that Ms. Tilley did not provide the newspaper with any medical information that it did not already possess in the medical records and that other information provided by Ms. Tilley[6] was not confidential medical information. Based on this evidence, the newspaper argued that it reasonably believed that Ms. Tilley could disclose the information without violating her duty of patient confidentiality.
In response, the Irvines asserted that they did not authorize Ms. Tilley to divulge confidential medical information to the newspaper. Without pointing to specific portions of the record and without any further elaboration, they Irvines stated that "[d]efendants knew the information they obtained from Ms. Tilley was a direct violation of the physician patient privilege." (Emphasis added.) Under the circumstances of this case, this statement, without more, is insufficient to create a genuine issue of material fact regarding whether the newspaper reasonably believed that Ms. Tilley could disclose the information without violating her duty of patient confidentiality. Accordingly, the trial court properly granted summary judgment in favor of the newspaper on this claim. The Irvines' second and fourth assignments of error are overruled.
 C. Third Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on Appellants' claim of fraud."
In their third assignment of error, the Irvines contend that the trial court erred in granting summary judgment in favor of appellees on their fraud claim. We disagree.
In order to prove an actionable claim for fraud, a party must establish the following elements:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
 The Newpaper
In order to meet its Dresher burden, the newspaper presented competent evidence that it had not made any representations to the Irvines or their counsel that it would only use Ms. Irvine's medical records for legal purposes. Specifically, the newspaper presented the affidavit of Ms. Leach, the Vice President and Editor of the Akron Beacon Journal, in which she attested that none of the Akron Beacon Journal's employees were present when the release of Ms. Irvine's medical records was being discussed and that the newspaper never agreed to any limitations on the use of the medical records. The newspaper also pointed to the affidavit of Mr. Meyer, a reporter, in which he testified that neither he nor any of his colleagues working on the story ever spoke to the Irvines or their attorney regarding the release of the medical records. Mr. Kopp also stated in his affidavit that, at no time, did he represent or promise the trial court, the Irvines, or the Irvines' attorney that he would prevent the newspaper from receiving, using, or publishing the medical records.
Based on the foregoing, the newspaper met its Dresher burden regarding the Irvines' fraud claim. As such, the Irvines were required to point to or submit some evidentiary material that showed a genuine dispute over the material facts exists. Henkle, 75 Ohio App.3d at 735. The Irvines failed to do so, instead making factual statements without pointing to specific evidentiary materials to support them. Accordingly, we find that the trial court did not err in granting summary judgment in favor of the newspaper on the Irvines' fraud claim.
 The Law Firm
In support of its motion for summary judgment, the law firm presented competent evidence demonstrating that the Irvines did not justifiably rely upon any alleged misrepresentation by the law firm. Specifically, the law firm pointed to the deposition testimony of the Irvines. Ms. Irvine testified that she generally could not recall the circumstances surrounding the release of her medical records, including whether anyone had made any promises to her about what would happen to the medical records, if she authorized their release. The portion of Mr. Irvine's deposition cited by the law firm likewise demonstrated an absence of a genuine issue of material fact as to whether the medical records were provided in reliance upon Mr. Kopp's alleged misrepresentation.
In response, the Irvines adduced the affidavit testimony of Jana L. DeLoach, the law clerk of the trial court in Irvine I. Ms. DeLoach stated that she was present at a pretrial conference, in which discovery of the medical records was discussed. Ms. DeLoach related that the Irvines' trial counsel objected to the production of the medical records on the basis that the only reason the defendants wanted the records was to publish them. According to Ms. DeLoach, Mr. Kopp stated that the defendants had no intention of publishing the medical records and needed them to address the issue of damages at trial. These statements, however, fail to create a genuine issue of material fact as to whether the Irvines justifiably relied upon the alleged misrepresentations. The affidavit does not even address whether the Irvines in fact relied upon the alleged misrepresentations in deciding to authorize the release of the records. Accordingly, the trial court properly entered summary judgment in favor of appellees on the Irvines' fraud claim. The Irvines' third assignment of error is overruled.
 D. Fifth Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on Appellants' claim of intentional infliction of emotional distress."
In their fifth assignment of error, the Irvines assert that the trial court erred in granting summary judgment in favor of appellees on the Irvines' intentional infliction of emotional distress claim, as a genuine issue of material fact remained for trial. We disagree.
To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements:
 "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community;' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable [person] could be expected to endure it.'" (Citations omitted.) Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34; see, also, Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, syllabus.
Significantly, the defendant's conduct must be
 "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Yeager, supra, at 375, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d.
In the present case, it is undisputed that the trial court ordered the production of the medical records during discovery in Irvine I. Despite being ordered to produce records which they considered to be highly personal in nature, the Irvines did not request that the medical records be placed under seal or request that their use be otherwise restricted. The trial court did not restrict their use and determined in Irvine II
that the subsequent publication of the information contained in the medical records did not violate any court order justifying a finding of contempt. Additionally, prior to publishing the article at issue herein, the appellees sent both the trial court and the Irvines' attorney a letter expressing their intention to publish an article based in part on the medical records and giving the Irvines and the court the opportunity to voice any concerns. The Irvines did not respond to the letter, and the trial court did not take any actions to restrict their use. Therefore, construing the evidence most strongly in favor of the Irvines, we find that reasonable minds could not conclude that the appellees' conduct of publishing the article was extreme and outrageous within the meaning of this tort. Consequently, we hold that the trial court properly granted summary judgment in favor of the appellees on the Irvines' intentional infliction of emotional distress claim. The Irvines' fifth assignment of error is overruled.
 E. Sixth Assignment of Error "The trial court erred in granting summary judgment in favor of Appellees on grounds of res judicata."
In their sixth assignment of error, the Irvines have argued that the trial court erred in granting summary judgment in favor of appellees on the grounds of res judicata. This assignment of error, however, has been rendered moot by our disposition of the Irvines' first through fifth assignments of error. See App.R. 12(A)(1)(c). Accordingly, we decline to address the sixth assignment of error.
 III.
Appellants' first through fifth assignments of error are overruled. Their sixth assignment of error has been rendered moot by our disposition of the other assignments of error. See App.R. 12(A)(1)(c). The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, P.J., CARR, J. CONCUR.
[1] On July 13, 1999, the trial court denied the newspaper's motion to reconsider the trial court's order restricting the newspaper's use of the portions of the Irvines' depositions dealing with the alleged domestic abuse.
[2] In March of 2000, Irvine II proceeded to trial. The jury entered a verdict in favor of defendants on the Irvines' invasion of privacy claims based upon the newsgathering activities and a verdict in the amount of $206,500 in favor of the Irvines on their telemarketing claims.
[3] Mr. Meyer, Mr. McKnight, and Ms. Hone-McMahan were all reporters for the Akron Beacon Journal.
[4] The Irvines focus on an alleged violation of R.C. 2317.02(B).
[5] In their appellate brief, the Irvines argued that the use of the medical records was restricted to legal purposes only. Whether thesubsequent use of the medical records was restricted or unrestricted is irrelevant to this tort, as the appropriate inquiry is whether the release of the medical records by the physician or hospital was authorized. See Biddle, supra. Here, the release of the medical records was authorized.
[6] Apparently, in addition to confirming that the abbreviation "HUSB" meant "husband," Ms. Tilley told Mr. Meyer that Ms. Irvine informed her that her husband had assaulted her and that she (Ms. Tilley) encouraged Ms. Irvine to speak with a social worker. Ms. Tilley also informed the reporter that, after disclosing this information, Ms. Irvine returned to Ms. Tilley's work station and asked Ms. Tilley not to tell anyone because she would be in trouble.