OPINION
{¶ 1} Defendant-appellant, Indiana Insurance Company ("Indiana"), appeals from the judgment of the Franklin County Court of Common Pleas: (1) granting summary judgment to defendant-appellee, Michael Shane Watts ("Watts"), on Indiana's cross-claim for declaratory judgment; (2) granting summary judgment to plaintiffs-appellees, Amy A. Chickey ("Amy"), Bruce Chickey, and Pamela Chickey (collectively "appellees"), on Indiana's counterclaim for declaratory judgment; and (3) granting summary judgment to defendant-appellee, Allstate Insurance Company ("Allstate"), on appellees' claims and on Indiana's cross-claim for declaratory judgment. Defendant-appellant, Arlington Upholstery and Interior Design, Inc. ("Arlington"), appeals from the judgment of the Franklin County Court of Common Pleas denying its motion for summary judgment. On December 3, 2004, this court consolidated these appeals for purposes of record filing and oral argument.
 {¶ 2} Appellees' claims arise out of a motorcycle accident (the "accident") that occurred on November 28, 1998, while Amy was a passenger on a motorcycle driven by her finance, Watts. While attempting to turn from a parking lot onto Henderson Road in Columbus, Ohio, Watts lost control of the motorcycle, struck the concrete median strip, and overturned the motorcycle. As a result of the accident, Amy was thrown from the motorcycle and sustained injuries.
 {¶ 3} In November 2000, Amy and her parents, Bruce and Pamela Chickey, filed suit in the Franklin County Court of Common Pleas (case No. 00CVC11-10182). Appellees voluntarily dismissed their claims without prejudice on November 19, 2001, and re-filed their claims on October 18, 2002. In their re-filed complaint, appellees asserted claims against Watts, Arlington, Allstate, Indiana, Continental Casualty Company ("Continental"), two John Doe insurers, and two additional John Does. Appellees alleged that, at the time of the accident, Watts was acting within the scope of his employment by Arlington. In addition to asserting negligence claims against Watts and Arlington, appellees sought uninsured/underinsured motorists ("UM/UIM") coverage under five insurance policies: (1) Amy's personal auto policy issued by Allstate; (2) Bruce and Pamela Chickey's homeowner's policy issued by Allstate;[1] (3) Arlington's Commercial Protector Policy issued by Indiana; (4) a Continental policy issued to Amy's employer, Vrable Healthcare Services nka Omnicare Health Network; and (5) a Continental policy issued to Bruce Chickey's employer, Kal Kan Foods, Inc. (a subsidiary of Mars, Inc.).
 {¶ 4} On December 27, 2002, Indiana filed its answer to appellees' re-filed complaint, along with a counterclaim and cross-claim, seeking a declaratory judgment that the Commercial Protector Policy, BOP9205746, it issued to Arlington ("Indiana policy") did not provide liability or UM/UIM coverage for any party to the lawsuit.
 {¶ 5} All parties moved for summary judgment. Appellees initially moved for summary judgment on Indiana's counterclaim and, subsequently, moved for partial summary judgment with respect to Watts' negligence, proximate cause, and lack of contributory negligence. Indiana moved for summary judgment on its counterclaim and cross-claim. Watts moved for summary judgment on Indiana's cross-claim. Allstate moved for summary judgment on Indiana's cross-claim and on appellees' claims. Continental moved for summary judgment on appellees' claims.
 {¶ 6} On March 11, 2004, finding genuine issues of material fact regarding coverage under the Indiana policy, the trial court issued a decision and entry denying Indiana's motion for summary judgment and partially granting appellees' motion for summary judgment on Indiana's counterclaim. The court stated that "if it is established that Defendant Watts was working within the course and scope of his employment with [Arlington] at the time of the accident, and the [appellees'] liabilities arose because of the acts or omissions of Defendant Watts, then the [appellees] are entitled to coverage [under the Indiana policy]."
 {¶ 7} On March 25, 2004, Indiana and appellees separately moved the trial court to reconsider its March 11, 2004 decision and entry. Appellees submitted additional evidence and argued that no genuine issues of material fact remained as to whether Watts was acting within the scope of his employment by Arlington at the time of the accident. Indiana argued that, whether or not Watts was acting within the scope of his employment by Arlington, he did not qualify as an insured under the Indiana policy.
 {¶ 8} On July 15, 2004, the trial court filed a decision and entry addressing the motions for reconsideration and the remaining motions for summary judgment. Upon reconsideration, the court found that Watts was acting within the scope of his employment by Arlington at the time of the accident. The court: (1) denied Indiana's motion for reconsideration; (2) granted appellees' motion for reconsideration; (3) granted appellees' motion for summary judgment on Indiana's counterclaim; (4) granted Continental's motion for summary judgment; (5) denied Arlington's motion for summary judgment; (6) granted Watts' motion for summary judgment on Indiana's cross-claim; (7) granted appellees' motion for partial summary judgment against Watts; and (8) granted Allstate's motion for summary judgment on appellees' claim and on Indiana's cross-claim. The instant appeals followed.
 {¶ 9} Indiana asserts the following assignments of error:
Assignment Of Error No. 1:
The trial court erred, to the prejudice of Appellant Indiana Insurance Company, in granting Defendant Watts' motion for summary judgment as to Indiana Insurance Company's cross-claim for declaratory judgment and in determining that Defendant Watts is entitled to coverage under the commercial business owner's insurance policy issued by Indiana Insurance Company to Arlington Upholstery and Interior Design, Inc.
Assignment Of Error No. 2:
The trial court erred, to the prejudice of Appellant Indiana Insurance Company, in weighing the evidence and/or using the responses of Defendant Watts to Plaintiff's request for admissions directed to Defendant Watts only, in determining that no genuine issue of fact remained for trial.
Assignment Of Error No. 3:
The trial court erred, to the prejudice of Appellant Indiana Insurance Company, in determining that Defendant Watts was an employee acting within the course and scope of his employment with Defendant Arlington Upholstery and Interior Design, Inc. at the time of the accident, determining that Plaintiffs are entitled to coverage under the commercial business owner's insurance policy issued by Indiana Insurance Company to Arlington Upholstery and Interior Design, Inc., and in granting the Plaintiffs' motion for summary judgment as to Indiana Insurance Company's counterclaim for declaratory judgment.
Assignment Of Error No. 4:
The trial court erred, to the prejudice of Appellant Indiana Insurance Company, in granting Defendant Allstate Insurance Company's motion for summary judgment on the Plaintiffs' claims and Indiana Insurance Company's cross-claim for declaratory judgment.
 {¶ 10} In its consolidated appeal, Arlington asserts the following assignments of error:
Assignment of Error Number 1:
Trial Court erred or abused its discretion, to the prejudice of Appellant Arlington in determining that Arlington was in business on the night of the accident in question, that Defendant Watts was an employee of Arlington on the date of the accident, and that Watts was acting within the course and scope of his employment with the company at the time of the accident.
Assignment of Error Number 2:
The Trial Court erred or abused its discretion, to the prejudice of Arlington in denying the Motion for Summary Judgment of Arlington.
 {¶ 11} As a preliminary matter, before addressing the merits of these appeals, we must dispose of Indiana's motion to strike from the record Watts' affidavit, executed on August 19, 2004, and attached to his appellate brief, along with all references thereto. Indiana argues that this court may not consider Watts' affidavit on appeal because it was not part of the record before the trial court. In response to Indiana's motion to strike, Watts contends that he filed his affidavit in the trial court and that it is, therefore, part of the record on appeal pursuant to App. R. 9(A).
 {¶ 12} App. R. 9(A) provides, in pertinent part, that "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." A reviewing court may not add matter to the record that was not part of the trial court's proceedings and then decide the appeal based on the new matter. McAuleyv. Smith (1998), 82 Ohio St.3d 393, 396.
 {¶ 13} Watts filed his affidavit in the trial court on August 19, 2004, in response to Arlington's motion for reconsideration of the trial court's July 15, 2004 decision and entry. However, Watts' affidavit was not before the trial court when it rendered its initial decision and entry on appellees' and Indiana's motions for summary judgment or when the trial court rendered its subsequent decision and entry on the same parties' motions for reconsideration. Watts did not file his affidavit until after the trial court issued the decision and entry from which Indiana and Arlington appeal; in fact, Watts did not file his affidavit until after Indiana filed its notice of appeal. Thus, the trial court could not have considered Watts' affidavit when ruling on the parties' motions for summary judgment.
 {¶ 14} Appellate review is limited to the record as it existed at the time the trial court rendered its judgment. Van Meter v. Stebner (Dec. 28, 1994), Medina App. No. 2348-M, citing McKay v. Cutlip (1992),80 Ohio App.3d 487, 490, fn. 3; see, also, Hill v. Home RoamPools, Ashtabula App. No. 2003-A-0097, 2003-Ohio-5862, at ¶ 4-5
(appellate court struck from record amended complaint, filed after notice of appeal, because the trial court could not have considered it in reaching its decision). To consider Watts' affidavit for the first time on appeal would be akin to adding matter to the record that was not before the trial court, in contravention of settled authority prohibiting appellate courts from doing so. Because Watts' affidavit was not part of the trial court's record when it issued the decisions and entries from which the parties appeal, we grant Indiana's motion to strike.
 {¶ 15} We now turn to the merits of the instant appeals.
 {¶ 16} Both Indiana and Arlington appeal from the trial court's disposition of motions for summary judgment. Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it, even if the trial court failed to consider those grounds. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 17} Pursuant to Civ. R. 56(C), summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 18} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must then produce competent evidence of the types listed in Civ. R. 56(C) showing that there is a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 19} We begin by addressing Indiana's second assignment of error, in which Indiana claims that the trial court erred by weighing the evidence and/or using Watts' responses to appellees' requests for admissions against Indiana in determining that no genuine issue of material fact remained for trial. Specifically, Indiana argues that the trial court erred by considering against Indiana Watts' admission that, at the time of the accident, he was acting within the scope of his employment.
 {¶ 20} Pursuant to Civ. R. 36(A), "[a] party may serve upon any other party a written request for the admission * * * of the truth of any matters within the scope of Rule 26(B) set forth in the request, that relate to statements or opinions of fact or of the application of law to fact[.]" Civ. R. 36(B) provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." In response to appellees' requests for admissions, Watts admitted that, at the time of the accident, he was an employee of Arlington, that he was acting in furtherance of his employment, and that he was operating the motorcycle for the business benefit of Arlington.
 {¶ 21} Civ. R. 36 admissions are not evidentiary admissions such as admissions against interest; they are more in the nature of stipulations. 1970 Staff Notes to Civ. R. 36(A); In re Miamisburg TrainDerailment Litigation (1999), 132 Ohio App.3d 571, 588. A stipulation is a voluntary agreement between opposing parties, which may not be used against a party who has refused to agree. Almondtree Apts. v. Bd. ofRevision of Franklin Cty. (Feb. 6, 1990), Franklin App. No. 89AP-625, citing Burdge v. Bd. of Cty. Commrs. (1982), 7 Ohio App.3d 356, 358. Because Indiana did not agree to the matters Watts admitted, Indiana contends that Watts' admissions are not binding upon Indiana.
 {¶ 22} In Progressive Ins. Co. v. Hammond (Feb. 8, 1991), Trumbull App. No. 89-T-4334, the Eleventh District Court of Appeals held that Civ. R. 36 admissions "should be binding only upon the party to whom they were addressed." In that case, an insured of Progressive Insurance Company ("Progressive") was involved in an altercation with an insured of Nationwide Insurance Company ("Nationwide"). Progressive filed a declaratory judgment action, naming its insured and Nationwide's insureds as defendants. The trial court substituted Nationwide as a party-defendant because, if Progressive did not owe liability coverage to its insured, Nationwide would be liable to its own insureds under its policy's UM/UIM provisions. The parties submitted the matter to the trial court on briefs. In its trial brief, Nationwide attempted to use Civ. R. 36 admissions by Progressive's insured against Progressive, which was not served with the requests for admissions. The court of appeals held that the trial court correctly refused to consider the admissions against Progressive because they were binding only as to Progressive's insured, to whom they were directed. The Twelfth District Court of Appeals concluded likewise in Great Am. Ins. Co. v. Duff Truck Line, Inc. (Sept. 14, 1983), Butler App. No. CA82-11-0115. The fact that the admissions at issue in Progressive Ins. Co. and Great Am. Ins. Co. resulted from failure to respond to Civ. R. 36 requests for admissions does not alter the effect of such admissions on third parties.
 {¶ 23} Civ. R. 36 is modeled after Fed.R.Civ.P. 36. See 1976 Staff Note to Civ. R. 36(A). Although not controlling with regard to interpretation of the Ohio Rules of Civil Procedure, federal case law construing the Federal Rules of Civil Procedure can be instructive where, as here, the Ohio and federal rules are similar. First Bank of Marietta v. Mascrete,Inc. (1997), 79 Ohio St.3d 503, 508. Consistent with the aforementioned Ohio courts' analysis of Civ. R. 36, federal courts have held that an admission, pursuant to Fed.R.Civ.P. 36, binds only the party to whom the request for admission was directed and not a co-party. Riberglass, Inc.v. Techni-Glass Industries, Inc. (C.A.11, 1987), 811 F.2d 565, 566;Alipour v. State Auto. Mut. Ins. Co. (N.D.Ga. 1990), 131 F.R.D. 213, 215;In re Leonetti (E.D.Pa. 1983), 23 B.R. 1003, 1009. Upon review, we find that Watts' Civ. R. 36 admissions are not binding upon Indiana.
 {¶ 24} Based on the foregoing, we agree that the trial court erred by either treating Watts' admissions as binding on Indiana or weighing the evidence. The addition of Watts' admissions to the record on reconsideration did not eliminate the evidence the trial court previously identified as weighing against summary judgment on Indiana's counterclaim. Because Watts' admissions were not binding upon Indiana and because the trial court previously found that the record presented genuine issues of material fact, we find that the trial court improperly weighed the evidence in concluding that Watts' admissions resolved the genuine issues of material fact. Accordingly, we sustain Indiana's second assignment of error.
 {¶ 25} Because Arlington's two assignments of error and Indiana's first and third assignments of error are interrelated, we will discuss them together. Each stems, at least in part, from the trial court's determination that Watts was an employee of Arlington and was acting within the scope of his employment at the time of the accident. Both Arlington and Indiana argue that the trial court erred in determining that, at the time of the accident: Arlington continued to exist as an on-going business; Watts was an employee of Arlington; and Watts was acting within the scope of his employment. Arlington further argues that the trial court erred by failing to conclude that Watts was not acting within the scope of his employment by Arlington at the time of the accident and by, consequently, denying Arlington's motion for summary judgment.
 {¶ 26} Arlington and Indiana initially argue that the trial court erred by determining in its July 15, 2004 decision and entry that Arlington existed as an on-going business at the time of the accident. Prior to his death on November 20, 1998, eight days before the accident, Watts' father, David, was the sole shareholder and officer of Arlington, an Ohio corporation. Arlington and Indiana argue that at least a genuine issue of material fact remained as to whether Arlington remained in business on the date of the accident.
 {¶ 27} A corporation is a separate legal entity from its shareholders, even where there is only one shareholder. LeRoux's BillyleSupper Club v. Ma (1991), 77 Ohio App.3d 417, 420. Pursuant to R.C. 1701.04(E), "[t]he legal existence of [a] corporation begins upon the filing of the articles [of incorporation] or on a later date specified in the articles that is not more than ninety days after filing, and, unless the articles otherwise provide, its period of existence shall be perpetual." Perpetual succession is a fundamental attribute of corporate status. See Perkins v. Benguet Consol. Mining Co. (1951), 155 Ohio St. 116,124, overruled on other grounds, Wainscott v. St. Louis-San FranciscoRy. Co. (1976), 47 Ohio St.2d 133. Corporate shares are personal property, and "`title to personal property of a deceased person passes to his personal representative, his executor or administrator, pending the settlement of the estate, whether he dies testate or intestate.'"Lehtinen v. Drs. Lehtinen, Mervart West, Inc., 99 Ohio St.3d 69,2003-Ohio-2574, at ¶ 20, quoting Winters Natl. Bank Trust Co., Exr.v. Riffe (1965), 2 Ohio St.2d 72, paragraph one of the syllabus; see, also, R.C. 1701.24. Based on R.C. 1701.04(E) and the lack of any contrary evidence by Arlington, the legal existence of Arlington continued even after the death of its sole shareholder.
 {¶ 28} In support of its contention that Arlington ceased to conduct business upon David Watts' death, Indiana points to Watts' deposition testimony that "I closed the company down when [David Watts] died, and it went into the estate, and I had to restart another business."[2] (Watts Depo. at 16.) Indiana and Arlington also point to Watts' testimony that his father's "accounts were closed when he died." (Watts Depo. at 99.) Although Watts did testify that he "closed the company down," Watts made that statement in response to a question asking whether he was a shareholder in his current upholstery business, which is a sole proprietorship. Examined in context, Watts made the statement upon which Indiana relies to clarify the distinction between his father's company, Arlington, ownership of which went to his father's estate, and the sole proprietorship Watts began in early 1999, after the accident.
 {¶ 29} Watts' testimony contains no reference to when, after his father's death, Watts stopped acting on Arlington's behalf or when his father's accounts were closed. In his deposition, Watts testified as to various actions he undertook in establishing his sole proprietorship as a separate entity from Arlington. For example, Watts executed a new lease on the business premises in his name, opened a new bank account, and had new invoices printed with his name. However, Watts expressly stated that he took no action until at least December 1, 1998, several days after the accident. Thus, although the record contains evidence that, at some time, Watts stopped acting on Arlington's behalf, the record contains no evidence demonstrating that he did so prior to the accident. Based on the evidence in the record, we find that the trial court did not err in concluding that Arlington existed as an on-going business on November 28, 1998.
 {¶ 30} Arlington and Indiana next argue that, at the least, genuine issues of material fact remained as to whether Watts was an employee of Arlington on the date of the accident. The record contains undisputed evidence that Watts worked intermittently for Arlington for 16 to 17 years prior to his father's death and worked consistently for Arlington since Christmas 1996. Watts testified that he remained an employee of Arlington and that he was acting on Arlington's behalf at the time of the accident. Despite undisputed evidence that Watts was an employee of Arlington prior to his father's death and Watts' express testimony that he remained an employee of Arlington at the time of the accident, Arlington argues that Watts was, at best, an independent contractor at the time of the accident.
 {¶ 31} It is well-settled law in Ohio that "[w]hether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." Bostic v. Connor (1988), 37 Ohio St.3d 144,145-146. However, "where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." Id. at 146, citing Schickling v. Post Publishing Co. (1927),115 Ohio St. 589, syllabus. A trial court must submit the issue of whether a person is an employee or independent contractor to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. Bostic
at 147; Sack v. A.R. Nunn Son (1934), 129 Ohio St. 128, 134-135 ("where the circumstances disclosed by the uncontradicted evidence * * * are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby * * *, there arises a question of fact for the jury"). Because reasonable minds may only conclude that Watts remained an employee of Arlington on the date of the accident, the trial court did not err by refusing to submit that issue to a jury.
 {¶ 32} Arlington argues that the trial court improperly presumed that Watts was its employee at the time of the accident because he was an employee of Arlington prior to his father's death. In Indus. Comm. v.Laird (1933), 126 Ohio St. 617, paragraph one of the syllabus, the Ohio Supreme Court held that "[t]he law indulges no presumption that an employee is either a servant or an independent contractor, and the burden is upon the party having the affirmative of the issue to show the relation to be such as to entitle him to recover." However, nothing inLaird prohibits the trial court from considering evidence that Watts was an employee of Arlington prior to his father's death in determining whether Watts remained an employee at the time of the accident. Laird was an appeal of a denial of workers' compensation benefits based on the Industrial Commission's determination that Mr. Laird was an independent contractor rather than an employee. In Laird, the record contained no evidence conclusively establishing Mr. Laird's status as an employee or an independent contractor at any point in time prior to his injury. Therefore, the court would not presume that Mr. Laird was either an employee or an independent contractor. Laird at 620. Unlike Laird, the parties here do not dispute that Watts was an employee of Arlington at least until his father's death, eight days before the accident. Nothing in Laird prohibits the trial court from considering the evidence of Watts' undisputed employment status prior to his father's death.
 {¶ 33} Other courts have held that, where an employer/employee relationship has been established, "the law presumes that, having once been shown to exist, it continues until its non-existence has been established by satisfactory proof." Czuczko v. Golden-Gary Co., Inc.
(1931), 94 Ind. App. 47, 55, 58, overruled on other grounds, HayesFreight Lines v. Martin (1948), 118 Ind. App. 139; Norris v. New YorkCent. R. Co. (1927), 246 N.Y. 307, 311-313; Pettee v. Noyes (1916),133 Minn. 109, 111-112. Although not in the employment context, the Ohio Supreme Court has similarly recognized the "general principle that when a condition of things is once shown to exist, it is presumed to continue until the contrary is shown[.]" Hamilton v. State (1877), 34 Ohio St. 82,85 (regarding a defendant's reputation for truth and veracity); see, also, Dalgarn v. Leonard (1948), 55 Ohio Law Abs. 149 (regarding continuance of a contractual relationship). We find that the trial court did not err in considering the undisputed evidence that, prior to his father's death, Watts was an employee of Arlington in considering whether Watts remained an employee on the date of the accident.
 {¶ 34} Arlington and Indiana argue that Watts was no longer an employee of Arlington on the date of the accident because, after David Watts' death, Arlington could not control the manner and means of Watts' work. Therefore, they contend that Watts was, at best, an independent contractor. "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is exercised by the employer. * * * The ultimate question is not whether the employer actually exercises such control, but whether he has the right to control." Laird at 619. Thus, the fact that Arlington did not actually exercise control over Watts' work on the date of the accident is not determinative of whether Watts remained an employee of Arlington. A court must examine the individual facts of each case to determine who has the right to control. Bostic
at 146.
 {¶ 35} Until his death, Watts' father controlled Watts' working hours and dictated the work Watts needed to complete on any given day. The record contains no evidence that anyone other than Watts' father had authority to control the manner and means of Arlington employees' work. Nevertheless, after his death, Watts' father's authority to control Arlington's employees, including Watts, passed together with Arlington's corporate shares. Just as the death of a sole shareholder does not terminate a corporation's legal existence, neither does the death of a sole shareholder alter the status of the corporation's employees. Rather, the corporation's employees remain employees until one who gains control of the corporation, through inheritance or otherwise, dismisses them or changes their status. Because neither of those circumstances occurred here prior to the date of the accident, and given the undisputed evidence that Watts was an employee of Arlington prior to his father's death, the evidence permits only one conclusion: Watts remained an employee of Arlington, subject to the control of David Watts' successor.
 {¶ 36} Although David Watts' estate had yet to be opened as of the date of the accident and although no one had yet assumed day-to-day control over Arlington's operations, resulting questions regarding Watts' authority to act on Arlington's behalf go to whether Watts was acting within the scope of his employment rather than to whether Watts remained an employee of Arlington. From the evidence in the record, we find that reasonable minds could only conclude that Watts remained an employee of Arlington on the date of the accident. Therefore, the trial court did not err by concluding likewise on summary judgment.
 {¶ 37} Arlington and Indiana next argue that, even if Watts was an employee of Arlington on the date of the accident, a genuine issue of material fact remained as to whether Watts was acting within the scope of his employment at the time of the accident. Generally, whether an employee is acting within the scope of his employment is a question of fact for the jury. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330, citing Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271. The Ohio Supreme Court has noted that the term "scope of employment" cannot be accurately defined "because it is a question of fact and each case issui generis." Posin at 278. Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law. Osborne at 330.
 {¶ 38} Conduct is generally within the scope of employment if initiated, in part, to further or promote the employer's business. Martinv. Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 92. "It has also been stated that the act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." Posin at 278, citing Tarlecka v. Morgan (1932), 125 Ohio St. 319. An employee acts outside the scope of employment when his act bears no relationship to the employer's business or "is so divergent that its very character severs the relationship of employer-employee." Thomas v. OhioDept. of Rehab. Corr. (1988), 48 Ohio App.3d 86, 89.
 {¶ 39} In her deposition, Amy's grandmother, Nancy Chickey ("Nancy"), testified that she expected to see Amy and Watts on the day of the accident because Watts was going to give her a reupholstery estimate. Watts testified that, at the time of the accident, he and Amy were on their way to Nancy's house so that he could give her a written estimate for the reupholstery work she wanted him to perform. Amy arranged the visit to her grandmother's house for Watts to look at the furniture and to provide the estimate. Nancy had no plans for the evening of November 28, 1998, and told Amy and Watts that it did not matter what time they arrived. Nancy believed that Watts' father had been in the upholstery business and that Watts "was in there with him." (N. Chickey Depo. at 11.)
 {¶ 40} At the time of the accident, Watts considered himself an employee of Arlington, and he had a pre-printed Arlington estimate form in his pocket on which to write Nancy's estimate. Prior to his father's death, Watts' duties with respect to Arlington included performing upholstery work, and picking up and delivering furniture. Watts accompanied his father every day on sales calls and had previously used the motorcycle he was operating at the time of the accident to complete estimates on Arlington's behalf. Thus, Watts' stated intention of providing Nancy an estimate on Arlington's behalf falls within the functions Watts ordinarily performed in his employment. Although Watts and his father generally used Arlington's leased van to travel to look at furniture, the van was in the shop on the date of the accident.
 {¶ 41} Arlington and Indiana argue that reasonable minds could conclude that any estimate Watts intended to make was unconnected to Arlington's business and outside the scope of Watts' employment, and point to the fact that the invoice for the upholstery work Watts eventually completed for Nancy contained Watts' name and the name of Watts' sole proprietorship. Although it is undisputed that Watts eventually completed reupholstery work for Nancy under his sole proprietorship, this fact does not create a genuine issue for trial as to whether Watts was acting on Arlington's behalf at the time of the accident. Because the accident occurred before he and Amy reached Nancy's house, Watts was unable to complete his estimate for Nancy on the day of the accident. Watts did not bill Nancy for upholstery work until February 17, 2000, more than one year after the accident and long after Watts had started his own upholstery business. When he registered the trade name of his sole proprietorship with the Ohio Secretary of State, Watts stated that he had been operating under the trade name since January 1, 1999. Thus, the fact that Watts invoiced Nancy for upholstery work in the name of his new business over one year later is irrelevant to whether, on the night of the accident, Watts was acting within the scope of his employment by Arlington.
 {¶ 42} Indiana also points to other portions of Watts' deposition testimony, which it contends demonstrate genuine issues of material fact as to whether Watts was acting within the scope of his employment at the time of the accident. Immediately prior to the accident, Amy and Watts engaged in activities unrelated to Arlington's business, including going to dinner and visiting a bar. After leaving the bar, Watts went to a Blockbuster video store, but he and Amy ultimately decided against going inside. Shortly after testifying that he and Amy were headed to Nancy's house, Watts stated that, when they pulled from the parking lot onto Henderson Road immediately before the accident, "[w]e pulled out to go home — or to go to her grandmother's house." (Watts Depo. at 35.) Indiana calls Watts' mention of home an "inadvertent admission" that he was not acting within the scope of his employment. Thus, Indiana argues that a genuine issue of material fact remained as to whether Watts and Amy were actually en route to Nancy's house at the time of the accident and, thus, whether Watts was acting within the scope of his employment.
 {¶ 43} Indiana also points to the facts that the accident occurred at night, outside of Arlington's regular business hours, that there was no scheduled time for Watts' appointment with Nancy, and that neither the motorcycle nor any of Watts' clothing indicated his affiliation with Arlington. From such facts, Indiana argues that reasonable minds could conclude that Watts was not acting within the scope of his employment at the time of the accident.
 {¶ 44} In addition to arguing that Watts' deposition testimony reveals genuine issues of material fact, Indiana also argues that issues regarding Watts' credibility precluded summary judgment. It is well-settled that resolution of a motion for summary judgment does not include trying the credibility of witnesses. Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 167. In Killilea, this court noted:
* * * If an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question — for example, where the potential for bias and interest is evident — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness. * * *
Id., citing Duke v. Sanymetal Products Co. (1972), 31 Ohio App.2d 78,83; and McCormac, Ohio Civil Rules Practice (1984 Supp.) 66, Section 6.33. Although credibility concerns normally arise when the affidavits or deposition testimony of witnesses are in conflict, such concerns may arise even when the evidence on a factual issue appears to be uncontroverted where, under the circumstances, credibility is manifestly critical to a determination that there is no genuine issue as to the existence of that fact. Killilea at 167-168.
 {¶ 45} The issue of whether Watts was acting within the scope of his employment by Arlington at the time of the accident manifestly turns on Watts' credibility. In order to resolve that issue in Watts' favor, the trier of fact must believe Watts' testimony. Because Amy does not remember the day of the accident and because Watts' father died eight days earlier, only Watts' testimony was before the trial court with respect to this issue. Although Nancy corroborated Watts' testimony that he was scheduled to visit her to provide a reupholstery estimate, Nancy's testimony does not establish that, in doing so, Watts was acting on behalf of Arlington.
 {¶ 46} We find that the surrounding circumstances place Watts' credibility in issue. The evidence demonstrates that, on the evening of the accident, Watts and Amy had been engaged in social activities, including going out to dinner and visiting a bar, where Amy consumed alcoholic beverages. In addition, the accident occurred well outside Arlington's usual business hours, near the bar that Watts and Amy patronized, and near the video store that they contemplated patronizing that evening. These facts, taken together, create inferences that undermine Watts' conclusory testimony that he was acting within the scope of his employment at the time of the accident and create a credibility issue for the jury to resolve. Potential for interest and bias is also evident from Watts' incentive to see Amy, his former fiancé and the mother of his child, compensated for the injuries she sustained in the accident from coverage under the Indiana policy. Upon review of the record and the surrounding circumstances placing Watts' credibility in issue, we find that the trial court erred by failing to submit the issue of whether Watts was acting within the scope of his employment to the jury.
 {¶ 47} For the foregoing reasons, the trial court erred in determining on summary judgment that Watts was acting within the scope of his employment at the time of the accident. Accordingly, we sustain Arlington's first assignment of error. Because genuine issues of material fact remain as to whether Watts was acting within the scope of his employment at the time of the accident, the trial court did not err in denying Arlington's motion for summary judgment. Accordingly, we overrule Arlington's second assignment of error.
 {¶ 48} We now turn to the remaining issues under Indiana's first and third assignments of error. In addition to its arguments regarding Watts' employment status and whether Watts was acting within the scope of his employment at the time of the accident, Indiana also argues that the trial court erred in determining that Watts and appellees were entitled to coverage under the Indiana policy based on the policy language itself.
 {¶ 49} Courts generally interpret insurance policies by applying rules of contract law. Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89, overruled on other grounds, Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500. If the policy language is susceptible of more than one meaning, a court will construe the language strictly against the insurer and liberally in favor of the insured. Faruque v. Provident Life Acc.Ins. Co. (1987), 31 Ohio St.3d 34, 38, citing Buckeye Union Ins. Co. v.Price (1974), 39 Ohio St.2d 95, syllabus. However, a court may not apply the rule of liberal construction to create an ambiguity where the policy language has a plain and ordinary meaning. Karabin v. State AutomobileMut. Ins. Co. (1984), 10 Ohio St.3d 163, 166-167. If a policy's terms are clear and unambiguous, the interpretation of the contract is a matter of law. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio,Inc. (1984), 15 Ohio St.3d 321, 322. Thus, we turn to the language of the Indiana policy.
 {¶ 50} The Indiana policy's Commercial Protector Liability Coverage Form provides that, throughout the policy, the words "you" and "your" refer to the Named Insured, Arlington. The policy's business liability coverage, provides, in pertinent part, that:
A. COVERAGES
 1. Business Liability
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"," property damage", "personal injury" or "advertising injury" to which this insurance applies. * * *
The Indiana policy generally excludes coverage for "`[b]odily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any * * * `auto.'" However, the policy includes a "Hired Auto" and "Non-Owned Auto" liability endorsement ("Endorsement 44-50"), which provides, in pertinent part, as follows:
1. HIRED AUTO LIABILITY
This insurance provided under Paragraph A.1. Business Liability, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.
2. NON-OWNED AUTO LIABILITY
The insurance provided under Paragraph A.1. Business Liability, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.
Any coverage available under the Indiana policy in the instant case would arise under Endorsement 44-50.
 {¶ 51} Endorsement 44-50 contains the following relevant definitions:
2. "Hired Auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.
3. "Non-Owned Auto" means any auto you do not own, lease, hire or borrow which is used in connection with your business. * * *
The motorcycle Watts was operating at the time of the accident was titled in the name of Watts' late father. Arlington did not own, lease, hire or borrow the motorcycle. Thus, to the extent it was used in connection with Arlington's business, the motorcycle qualifies as a "non-owned auto."
 {¶ 52} The definition of an insured in the Indiana policy's Commercial Protector Liability Coverage Form includes a corporate named insured's employees, other than executive officers, while acting within the scope of their employment. However, Endorsement 44-50 replaces the policy's definition of an insured and designates the following as insureds for purposes of hired and non-owned auto liability coverage:
a. You;
b. Any other person using a "hired auto" with your permission;
c. For a "non-owned auto", any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;
d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.
Under its first assignment of error, Indiana argues that Watts does not qualify as an insured under Endorsement 44-50 even if he was acting within the scope of his employment by Arlington at the time of the accident.
 {¶ 53} Based on section B.3.c., Indiana argues that Endorsement 44-50 only provides non-owned auto liability coverage to Arlington's partners and executive officers. Thus, regardless of whether Watts otherwise qualifies as an insured under sections B.3.a., b. or d. of Endorsement 44-50, Indiana argues that Watts is not entitled to non-owned auto liability coverage because he was not a partner or executive officer of Arlington. Indiana's argument is contrary to the plain language of Endorsement 44-50, which sets forth four distinct categories of insureds for purposes of hired and non-owned auto liability coverage. Application of the non-owned auto liability coverage provision is not limited to any particular category of insureds under section B.3.
 {¶ 54} Although section B.3.c. limits the circumstances in which Arlington's partners or executive officers may qualify as insureds in non-owned autos under Endorsement 44-50, it does not limit non-owned auto liability coverage exclusively to partners and executive officers: Indiana's restrictive construction of section B.3.c. would render sections B.3.a. and B.3.d. of Endorsement 44-50, which identify two additional categories of insureds, meaningless for purposes of non-owned auto liability coverage. Therefore, the mere fact that Watts was not a partner or executive officer of Arlington does not preclude him from coverage if he otherwise qualifies as an insured under Endorsement 44-50.
 {¶ 55} Relying on the Ohio Supreme Court's decision in Scott-Pontzerv. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, as subsequently limited by Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, appellees argue that Watts qualified as an insured under section B.3.a. of Endorsement 44-50, which designates "you" as an insured for hired and non-owned auto liability coverage. In Scott-Pontzer, the Supreme Court held that an insurance policy's designation of "you" as an insured for purposes of UM/UIM coverage was ambiguous where "you" referred to the named insured and the sole named insured was a corporation. Because a corporation "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle[,]" the Supreme Court concluded that "it would be reasonable to conclude that `you,' while referring to [the corporate named insured], also includes [the corporate named insured's] employees, since a corporation can act only by and through real live persons." Scott-Pontzer at 664. In Galatis, the Supreme Court limited Scott-Pontzer and held that, "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurswithin the course and scope of employment." (Emphasis added.) Galatis
at paragraph two of the syllabus.
 {¶ 56} In its March 11, 2004 decision and entry, the trial court relied on Scott-Pontzer and Galatis and stated:
The Court finds that the "You" in the Who Is An Insured section of Endorsement 44-50, which names a corporate entity as the named insured, is analogous to the case law set forth most recently in Galatis, in which a corporate entity is listed as the named insured for UM/UIM coverage. As such, the Court finds that for purposes of determining coverage, the "You" in Endorsement 44-50 which effectively identifies [Arlington Inc.] as the named insured for coverage under the Hired Auto and Non-Owned Auto Liability Endorsement, individual employees are included in that coverage, so long as that employee was working within the course and scope of their employment.
Indiana argues that the trial court erred in determining that "you" is ambiguous under Endorsement 44-50's definition of who is an insured and in, thus, concluding that Watts qualified as "you" while acting within the scope of his employment. Indiana asserts that the "you" in Endorsement 44-50's description of who is an insured is unambiguous and refers only to Arlington.
 {¶ 57} The Indiana policy is distinguishable from the policies before the Supreme Court in Scott-Pontzer and Galatis. Unlike the policy language the Supreme Court considered in Scott-Pontzer and Galatis, the Indiana policy's designation of a corporate "you" as an insured does not relate to UM/UIM coverage. Rather, it relates to liability coverage arising out of the use of a hired or non-owned auto. Under UM/UIM coverage provisions, insurers generally agree to pay sums the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury the insured sustained in an accident arising out of the ownership, maintenance or use of an uninsured or underinsured automobile. The ambiguity in a UM/UIM policy's designation of the insured solely as a corporation arises from the fact that a corporation cannot occupy or operate an automobile and cannot suffer bodily injury or death.Scott-Pontzer at 664. No such ambiguity exists in the context of liability coverage. The Indiana policy's liability coverage does not require that the insured suffer bodily injury or death to qualify for coverage. It simply requires that, as a result of situations covered by the policy, the insured become legally obligated to pay damages.
 {¶ 58} Although a corporation cannot occupy or operate an automobile or suffer bodily injury or death, a corporation can be held liable for damages. Thus, unlike in the context of UM/UIM coverage, the basis for finding ambiguity in the designation of a corporate "you" as an insured does not exist in the context of liability coverage. See Pitsenbarger v.Foos, Miami App. No. 2003 CA 22, 2003-Ohio-6534, at ¶ 24 (holding that, because a corporation can be held liable for damages, a definition of an insured as "you" in a liability policy can be consistently and logically read as meaning the corporation, is not ambiguous, and does not include the corporation's employees). Therefore, we find that the B.3.a. designation of "you" as an insured for purposes of hired auto and non-owned auto liability coverage is unambiguous and refers only to Arlington and not to Watts.
 {¶ 59} Watts does not qualify as an insured for purposes of non-owned auto liability coverage under section B.3.b., which applies only to hired auto liability coverage, or under section B.3.c., which applies only to Arlington's partners or executive officers. Therefore, if Watts qualifies as an insured for non-owned auto liability coverage under the Indiana policy, he must qualify under section B.3.d, which defines an insured as "[a]ny other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above." To fall within the B.3.d. definition of an insured, Watts' liability to appellees must have arisen because of the acts or omissions of an insured under Endorsement 44-50.
 {¶ 60} Watts and appellees argue that, because Watts was acting within the course and scope of his employment at the time of the accident, his acts and/or omissions were the acts and/or omissions of Arlington. Thus, Watts contends that his liability to appellees arises because of the acts or omissions of "you" under section B.3.a. of Endorsement 44-50. As a general rule, if an employee's acts are within the scope of employment, then those acts are the acts of the corporation. Malone v. Courtyard ByMarriott L.P. (1994), 95 Ohio App.3d 74, 89, reversed on other grounds (1996), 74 Ohio St.3d 440. If Watts was acting within the scope of his employment at the time of the accident, his acts are attributable to Arlington and Watts may qualify as an insured under section B.3.d. of Endorsement 44-50. Because genuine issues of material fact remain as to whether Watts was acting within the scope of his employment by Arlington at the time of the accident, genuine issues of material fact likewise remain as to whether Watts qualifies as an insured under Endorsement 44-50. Therefore, the trial court erred in granting Watts' motion for summary judgment on Indiana's cross-claim for declaratory judgment. Accordingly, we sustain Indiana's first assignment of error.
 {¶ 61} In its third assignment of error, Indiana argues that the trial court erred in determining that appellees were entitled to coverage under the Indiana policy and in granting appellees' motion for summary judgment as to Indiana's counterclaim. In its March 11, 2004 decision and entry, the trial court held that, if Watts was acting within the scope of his employment by Arlington at the time of the accident, he would qualify as an insured under section B.3.a. of Endorsement 44-50 based on ambiguity in the endorsement's use of "you" to define an insured. The trial court further stated that, with Watts qualifying as an insured under section B.3.a., appellees qualify as insureds under section B.3.d. for their liability arising because of Watts' acts or omissions. As stated above, we find no ambiguity in Endorsement 44-50's use of the word "you" and find that "you" refers only to Arlington. Because Watts does not qualify as an insured under section B.3.a. of Endorsement 44-50, appellees do not qualify as insureds under section B.3.d.
 {¶ 62} Moreover, section B.3.d. limits coverage to one's "liability because of acts or omissions of an insured." Under the business liability coverage, set forth in the Commercial Protector Liability Coverage Form, section A.1.a., Indiana agrees to "pay those sums that the insured becomes legally obligated to pay as damages." Endorsement 44-50 expands the situations in which such coverage applies. Appellees are not seeking coverage for sums they have become "legally obligated to pay as damages" or for any liability imposed upon them because of the acts or omissions of another insured. Rather, appellees seek recovery for their own losses. For this additional reason, appellees do not qualify as insureds under section B.3.d. of Endorsement 44-50. Therefore, the trial court erred in granting summary judgment in appellees' favor on Indiana's counterclaim. Accordingly, we sustain Indiana's third assignment of error.
 {¶ 63} With respect to appellees' entitlement to coverage under the Indiana policy, Indiana notes that its policy does not contain a UM/UIM endorsement and argues that its policy does not provide UM/UIM coverage by operation of law. Based on its conclusion that appellees were entitled to liability coverage under the Indiana policy, the trial court did not address this issue on its merits and determine whether UM/UIM coverage arises by operation of law under the Indiana policy. It is well-established that this court will not rule upon questions not considered by a trial court. Ochsmann v. Great Am. Ins. Co., Franklin App. No. 02AP-1265, 2003-Ohio-4679, citing Mills-Jennings, Inc. v. Dept.of Liquor Control (1982), 70 Ohio St.2d 95, 99. Therefore, we will not address the availability of UM/UIM coverage under the Indiana policy for the first time on appeal.
 {¶ 64} In its fourth and final assignment of error, Indiana argues that the trial court erred in granting Allstate's motion for summary judgment on appellees' claims and on Indiana's cross-claim for declaratory judgment. The sole basis for the trial court's entry of summary judgment in favor of Allstate was its determination that Indiana is obligated to provide Amy coverage in an amount greater than the uninsured policy limits of the Allstate policy. Because we have determined that genuine issues of material fact remain as to whether Watts qualifies as an insured under the Indiana policy and whether the Indiana policy will provide coverage for Amy's injuries, we also find that the trial court erred in granting Allstate's motion for summary judgment. Accordingly, we sustain Indiana's fourth assignment of error.
 {¶ 65} In conclusion, and for the reasons stated above, we sustain each of Indiana's assignments of error, sustain Arlington's first assignment of error, and overrule Arlington's second assignment of error. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
Motion to strike granted.
 Judgment affirmed in part, reversed in part and cause remanded.
BRYANT and McGRATH, JJ., concur.
[1] Appellees and Allstate voluntarily dismissed all claims related to the homeowner's policy, pursuant to a stipulation for dismissal and judgment entry filed February 21, 2003 and May 12, 2003.
[2] An estate was opened in the name of David Watts in the Franklin County Probate Court on January 28, 1999, approximately two months after the accident.